346 A.2d 59
COMMONWEALTH of Pennsylvania
v.
Daniel Martin CRONIN, Appellant (two cases).

Supreme Court of Pennsylvania.

Argued Jan. 20, 1975.

Decided Oct. 3, 1975.

Louis Lipschitz, Philadelphia, for appellant.

F. Emmett Fitzpatrick, Dist. Atty., Steven H. Goldblatt, Asst. Dist. Atty., Chief, Appeals Div., Benjamin H. Levintow, Asst. Dist. Atty., Abraham J. Gafni, Deputy Dist. Atty. for Law, Philadelphia, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

POMEROY, Justice.

Following a trial by jury, appellant was found guilty of murder in the first degree, aggravated robbery, assault and battery with intent to murder, aggravated assault and battery, assault and battery, and burglary. Post-verdict motions were denied and appellant was sentenced to life imprisonment for murder, twenty years probation for aggravated robbery and seven years probation for the assault convictions; all sentences were to run concurrently. Sentence was suspended on the burglary conviction. This appeal followed.[1]

1. Appellant perfected an appeal to this Court from the judgment of sentence imposed on the murder conviction pursuant to the Act of July 31, 1970, P.L. 673, No. 223, art. II, § 202(1), 17 P.S. § 211.202(1) (Supp.1975–76). The appeal from the judgments of sentence from the other convictions was taken to the Superior Court which then certified that appeal to this Court. Act of July 31, 1970, P.L. 673, No. 223, art. V, § 503(c), 17 P.S. § 211.503(c) (Supp.1975–76). Separate appeals should have been taken from each judgment, but in the absence of objection to the single appeal we will entertain it as filed. *Liberty Corp. v. D'Amico*, 457 Pa. 181, 329 A.2d 222 (1974), *cert. denied*, 419 U.S. 1054, 95 S.Ct.

The offenses of which appellant was convicted stemmed from the attempted robbery of a sporting goods store by Cronin and two other young men, William Flynn and Leon James. The latter two were acting at the behest of the appellant, who both plotted the details of the abortive robbery and served as getaway driver. During the course of the robbery attempt, the two brothers who owned the store, Henry and Louis Cooper, struggled with Flynn and James. Both were shot by Leon James. Louis died as a result of his wounds; Henry was severely wounded in the stomach, but survived.

■ ■ Appellant Cronin has assigned various errors in the conduct of the trial. We have concluded that reversal is required because of improper statements made by the prosecutor in his closing argument to the jury, and therefore need not consider the other issues presented.[2]

In the peroration of his argument to the jury, the assistant district attorney concluded as follows:

"Who said that Daniel Cronin, William Flynn and Jesse James had the right to play God and determine the precise moment at which Louis Cooper would leave this veil of tears?

635, 42 L.Ed.2d 651; *General Electric Credit Corp. v. The Aetna Casualty & Surety Co.*, 437 Pa. 463, 469–70, 263 A.2d 448 (1970); *Commonwealth v. Jackson*, 196 Pa.Super. 539, 542, 176 A.2d 178 (1961), *cert. denied*, 371 U.S. 893, 83 S.Ct. 193, 9 L.Ed.2d 126 (1962).

2. In addition to the question of prosecutorial misconduct, appellant's counselled brief asserts that appellant was denied a fair trial because he was compelled to assert the spousal privilege when his wife was called as a witness by the Commonwealth. In a *pro se* brief, Cronin argues: (1) that the trial court abused its discretion in refusing to question prospective jurors outside of the presence of the other veniremen; (2) that the prosecuting attorney was without authority to conduct the prosecution; (3) that the trial court's charge to the jury was erroneous in various respects; and (4) that the court permitted improper cross-examination of the appellant.

"Who was it that said that these three had the right to play God and leave Henry Cooper in the condition he presently finds himself?

"*I say to you that this defendant is guilty* of a conspiracy, with Jesse James and William Flynn, and he is guilty of the burglary through this conspiracy and attempted robbery through this conspiracy, and *of the murder of Louis Cooper* through this conspiracy, and the assault and battery, aggravated assault and battery with intent to kill, through this conspiracy, *and the only way, the only way you cannot find this defendant guilty of murder of the first degree is for Louis Cooper to walk through that door.* (N.T. 246). (Emphasis supplied) [3]

Appellant's counsel immediately objected and moved for the withdrawal of a juror,[4] which motion was denied. It is now contended that these remarks,[5] and particularly the italicized final portion of them, denied appellant a fair trial. We agree.

In two recent cases we have been called upon to consider remarkably similar statements made by prosecuting attorneys during their closing arguments: *Commonwealth v. Lark*, 460 Pa. 399, 333 A.2d 786 (1975); *Com-*

---

3. Appellant's counsel had anticipated that in his closing remarks the assistant district attorney might purport to summon the deceased victim as a witness. He therefore requested, at voir dire, permission to ask veniremen what their reaction would be to such a ploy. The request was denied.

4. It is to be noted that motions for the withdrawal of a juror have been abolished by Rule 1118 of our Rules of Criminal Procedure, 19 P.S. (1975 Pamphlet) and that the proper motion would have been for a mistrial. The misnomer was immaterial, however; since the motion was made in time to permit the trial court to correct any error, see *Commonwealth v. White*, 442 Pa. 461, 275 A.2d 75 (1971), the issue has been preserved for appellate review.

5. Appellant has also objected to several other remarks and actions of the district attorney during the course of the trial. In light of our decision that the above language alone merits reversal, we need not pass on their propriety.

*monwealth v. Lipscomb,* 455 Pa. 525, 317 A.2d 205 (1974) ;[6] in both cases we found the remarks sufficiently prejudicial to require reversals of the judgments of sentence. In *Lipscomb,* the objectionable statement was: " 'I think Mr. Sweeney [the deceased victim] would say "The only way you couldn't find this defendant guilty of murder of the first degree is for me to come alive again before your very eyes." ' " 455 Pa. at 527, 317 A.2d at 207. We made it clear that such rhetoric "is emphatically condemned." *Id.* at 529, 317 A.2d at 207. In *Lark,* in language almost identical to that in the case *sub judice,* the prosecuting attorney declaimed to the jury that " 'There's one way that you could find this defendant not guilty, there's only one way, and that's if Irving Rotfort [the deceased victim] walked through those courtroom doors, then you could find the defendant not guilty.' " *Id.* 460 at 404, 333 A.2d at 789. Reiterating the disapproval of such remarks which we had expressed in *Lipscomb,* we observed in *Lark* that "this amounted to a statement by the prosecutor that he was personally convinced that the appellant was guilty, and his innocence was as unlikely as the deceased's resurrection. We held [in *Lipscomb*] such *personal assertions* by the prosecutor on the guilt of the accused were beyond the scope of fair play and were reversible error." *Id.* at 404–405, 333 A. 2d at 789. See *Lipscomb, supra,* 455 Pa. at 528–29, 317 A.2d at 207; *Commonwealth v. Harvell,* 458 Pa. 406, 327 A.2d 27 (1974).

Our decisions in the cases cited above were declaratory of Disciplinary Rule DR 7–106(C)(4) of the Code of Professional Responsibility, which provides: "(C) In appearing in his professional capacity before a tribunal, a lawyer shall not: . . . (4) Assert his personal opinion as to the justness of a cause, as to the credibility of a witness, as to the culpability of a civil litigant, *or as to*

---

**6.** The attorney for the Commonwealth in *Lipscomb* was the same as in the present case.

*the guilt or innocence of an accused;* but he may argue, on his analysis of the evidence, for any position or conclusion with respect to the matters stated herein." 438 Pa. xxv, ci-cii (1970) (emphasis supplied).[7] *See also* American Bar Association Project on Standards for Criminal Justice, Standards Relating to the Prosecution Function, § 5.8(b) (Approved Draft, 1971).

To hold as we do today does not mean, as the Commonwealth suggests, that a prosecuting attorney is no longer "entitled to argue his case to the jury forcefully and, if need be, with eloquence," (Commonwealth's brief at 24) nor does it mean, that "he has been [shorn] of all oratorical emphasis," to use Judge Learned Hand's phrase. See *DiCarlo v. United States,* 6 F.2d 364, 368 (2d Cir. 1925), *cert. denied,* 268 U.S. 706, 45 S.Ct. 640, 69 L.Ed. 1168 (1925). We recognize that a district attorney must have reasonable latitude in fairly presenting a case to the jury, and that the trial judge must have reasonable discretion in deciding whether the bounds of propriety have been exceeded. See *Commonwealth v. McNeal,* 456 Pa. 394, 400, 319 A.2d 669 (1974). As the commentary to the ABA Standards puts it, "Of course, a prosecutor must be free to present his arguments with logical force and vigor." Our present holding, like the decisions cited above, is simply that a prosecuting attorney may not indulge in personal assertions of guilt of a defendant either by direct statement or indirectly by figure of speech. The summation here challenged was objectionable and prejudicial in both respects.[8]

---

7. This Disciplinary Rule relates to Canon 7 of the Code of Professional Responsibility, which reads "A lawyer should represent a client zealously within the bounds of the law." *See also* Ethical Consideration EC 7–24 to the same Canon. 438 Pa. at xcii.

8. The well-known passage from Mr. Justice Sutherland's opinion in *Berger v. United States,* 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1314, 1321 (1935) in holding objectionable the arguments put to a federal jury by a United States attorney, is equally ap-

The judgments of sentence are reversed and the case is remanded for a new trial.

plicable to prosecuting attorneys for the states, and is worth repeating here:

"The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer. He may prosecute with earnestness and vigor—indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one.

"It is fair to say that the average jury, in a greater or less degree, has confidence that these obligations, which so plainly rest upon the prosecuting attorney, will be faithfully observed. Consequently, improper suggestions, insinuations, and, especially, assertions of personal knowledge are apt to carry much weight against the accused when they should properly carry none."

Compare EC 7–13 of the Code of Professional Responsibility: "The responsibility of a public prosecutor differs from that of the usual advocate; his duty is to seek justice, not merely to convict. . . ." 438 Pa. lxxxviii.