480 A.2d 1171

**COMMONWEALTH of Pennsylvania**

v.

**Charles BROWN, Appellant.**

Superior Court of Pennsylvania.

Submitted Oct. 24, 1983.

Filed July 27, 1984.

Petition for Allowance of Appeal Denied Jan. 7, 1985.

Thomas L. McGill, Jr., Philadelphia, for appellant.

Robert B. Lawler, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before WICKERSHAM, BROSKY and HOFFMAN, JJ.

WICKERSHAM, Judge:

This is an appeal from the judgment of sentence of the Court of Common Pleas of Philadelphia County.

Appellant, Charles Brown, was arrested on January 8, 1981 for the stabbing death of Theodore Walker, which had occurred approximately one month earlier. Appellant was sixteen (16) years of age at the time of arrest. Also arrested was a 21 year old co-defendant, William Wharton.

Appellant was charged with possession of an instrument of crime, criminal conspiracy, robbery, murder, and involuntary manslaughter. Following a jury trial in late 1981, appellant was convicted of possession of an instrument of crime, criminal conspiracy, robbery, and murder in the second degree.[1] Post-trial motions were filed and denied. On April 28, 1982, appellant was sentenced to concurrent terms of life imprisonment for murder, five (5) to ten (10) years for criminal conspiracy, and two and one-half (2½) to five (5) years for possession of an instrument of crime.[2] While the sentence was to be served at Graterford State Correctional Institution, it was recommended by the lower court that due to his age, appellant be permitted to serve his initial sentence at Camp Hill State Correctional Institution. This appeal timely followed.

Viewing the evidence in the light most favorable to the Commonwealth as verdict winner, the testimony at trial established the following: On the evening of December 11, 1980, at approximately 11:30 p.m., Darryl Lamb and Michael Sawyer were standing on the street corner of Gratz and Susquehanna in Philadelphia, when they were joined by appellant and William Wharton. Wharton told the group that he needed money for Christmas. Wharton then took a knife from his pocket and began sticking it into a nearby wall. Then, leaving Lamb and Sawyer standing on the corner, appellant and Wharton began to walk down Susquehanna Avenue towards a sandwich shop. As appellant and Wharton approached the sandwich shop, the victim, Theodore Walker, a stranger to appellant and Wharton, came out of the shop. Appellant and Wharton walked towards the victim. As they passed him, Wharton tried to trip Walker, but instead fell down himself. Wharton got up, pulled a knife and he and appellant started to chase the victim, who had begun to run across the street. Walker

1. Appellant's co-defendant, William Wharton, was convicted of the same crimes at a separate jury trial before another judge.

2. Sentencing on appellant's conviction for robbery was suspended because it merged with his conviction for murder in the second degree.

fell, however, and as he tried to get up, Wharton stabbed him twice in the back. After appellant and Wharton went through the victim's pockets, appellant said, "Let's go" and he and Wharton ran down the street to their homes.

On appeal, appellant raises two issues:

1. Whether the motion court erred in denying appellant's motion to transfer his case and trial to the juvenile court where appellant demonstrated a need and amenability to the program of supervision, care and rehabilitative treatment he would receive as a juvenile?

2. Whether the trial court erred in failing to grant a mistrial, or give cautionary instructions where the prosecutor during closing argument expressed his opinion on the evidence and made statements designed to inflame the jury's passions, and prejudice the appellant?

Brief for Appellant at 2.

The law applicable to the transfer of a criminal proceeding in which a juvenile is charged with murder is found in section 6322(a) of the Juvenile Act, 42 Pa.C.S.A. § 6301 *et seq.*[3] That section states, in appropriate part:

[I]f it appears to the court in a criminal proceeding other than murder, that the defendant is a child, this chapter shall immediately become applicable, and the court shall forthwith halt further criminal proceedings, and, where appropriate, transfer the case to the division or a judge of the court assigned to conduct juvenile hearings, together with a copy of the accusatory pleading and other papers, documents, and transcripts of testimony relating to the case. If it appears to the court in a criminal proceeding charging murder, that the defendant is a child, the case may similarly be transferred and the provisions of this chapter applied.

Pursuant to 42 Pa.C.S.A. § 6322(a), the court in a criminal proceeding against a juvenile charged with murder *may* transfer the action to juvenile court. However, treatment

---

**3.** Act of July 9, 1976, P.L. 586, No. 142, § 2, effective June 27, 1978, as amended April 28, 1978, P.L. 202, No. 53, § 10(85), effective June 27, 1978; 42 Pa.C.S. § 6322(a).

as a youthful offender is not a matter of right[4] in such cases, and the determination of whether the interests of state and society require prosecution of murder on an indictment is left to the sound discretion of the common pleas court. *Commonwealth v. Pyle,* 462 Pa. 613, 342 A.2d 101 (1975). Subject to the due process limitations of *Kent v. United States,* 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966) and *In re Gault,* 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967), a decision whether to grant an application for transfer is within the sound discretion of the hearing judge.

■ Appellant argues that the hearing judge abused his discretion in refusing to transfer his murder charge from adult to juvenile court.

If appellant is to prevail, he must show a gross abuse of the broad discretion of the hearing judge who refused the transfer application. Such abuse may not merely be an error of judgment, but must be a misapplication of the law or an exercise of manifestly unreasonable judgment based upon partiality, prejudice or ill will.

*Commonwealth v. Romeri,* 314 Pa.Super. 279, 291, 460 A.2d 1139, 1145, *aff'd,* 504 Pa. 124, 470 A.2d 498 (1983).

The burden of proof in a transfer from adult to juvenile court was articulated by the Pennsylvania Supreme Court in *Commonwealth v. Pyle, supra:*

Murder has always been excluded from the jurisdiction of the juvenile courts.... Having continued to place murder, even where a young offender is involved, within

**4.** We note that, while it is not precedential because it expressed the view of a single justice, Mr. Justice O'Brien's opinion in *Commonwealth v. Wade,* 485 Pa. 453, 402 A.2d 1360 (1979), correctly states that under the Juvenile Act, the Legislature had decided that the crime of murder, whether committed by an adult or a juvenile, is of such serious nature as to originally exclude a juvenile accused of murder from the benefits and special treatment afforded by the Act. In light of the disparity in sentencing procedures (under the Juvenile Act, 42 Pa.C.S.A. § 6353(a), initial incarceration of juveniles cannot extend beyond three years; under the Crimes Code, 18 Pa.C.S.A. § 1102, second degree murder is punishable by life imprisonment), and while trying to protect public safety, the Legislature excluded the crime of murder from the original jurisdiction of juvenile court. *Id.,* 485 Pa. at 463, 402 A.2d at 1365.

the original and exclusive jurisdiction of the adult court, the assumption that the need for adult discipline and legal restraint exists in cases of this heinous nature also continues. With this in mind it becomes the juvenile's burden to show that he does not belong in the criminal court. In other words, it is the youth who must prove that he belongs in the juvenile setting by showing his *need* and *amenability* to the 'program of supervision, care and rehabilitation' which he would receive as a juvenile. In the event the evidence does not affirmatively demonstrate that he is the kind of youth who would benefit from the special features and programs of the juvenile court system and in the event no special reason exists for sparing the youth from adult prosecution and punishment (as for instance, evidence of mental illness or retardation) jurisdiction would necessarily remain within the criminal court system.

*Id.* 462 Pa. at 622–23, 342 A.2d at 106–07 (footnotes and citations omitted) (emphasis in original). *See also, Commonwealth v. Moyer,* 497 Pa. 643, 444 A.2d 101 (1982); *Commonwealth v. Pettus,* 492 Pa. 558, 424 A.2d 1332 (1981); *Commonwealth v. Barber,* 275 Pa.Super. 144, 418 A.2d 653 (1980).

The Pennsylvania Supreme Court in *Pyle* went on to observe that the determinative factors in deciding whether a juvenile is amenable to juvenile treatment will differ from case to case, and it outlined an approach for determining whether to grant a transfer:

Such determination should be made after careful review of the individual child's *personal* make-up, (*e.g.,* mental capacity and maturity as determined by consideration of his home and school environmental situation, emotional attitude, and pattern of living) his previous history (including any previous contact with law enforcement agencies and/or juvenile courts) and the nature and circumstances of the alleged homicide (*e.g.,* inquiry into whether the killing was committed in an aggressive, violent or wilful manner, whether the safety of the community

requires lengthy incarceration, whether it is more desirable to dispose of the entire offense in one court should the juvenile's associates in the alleged homicide be adults not within the juvenile jurisdiction).

*Commonwealth v. Pyle, supra* 462 Pa. at 623 n. 13, 342 A.2d at 106–07 n. 13 (citations omitted) (emphasis in original). *See also, Commonwealth v. Sourbeer,* 492 Pa. 17, 422 A.2d 116 (1980); *Commonwealth v. Romeri, supra.*

In the instant case, appellant was arrested approximately eleven days before his seventeenth birthday. He was then in the twelfth grade. A decertification hearing was begun on June 4 and concluded on June 19, 1981. On June 25, 1981, the motion to transfer the case to juvenile court was denied. Upon a careful reading of the transcript of the decertification hearing, the opinion of the lower court, the briefs of the parties, and the relevant case law, we find no abuse of discretion in this case. Appellant simply failed to prove that he belongs in the juvenile setting.

Appellant based his transfer request primarily upon his alleged need for the education, vocational, and rehabilitative care that he would receive as a juvenile. Appellant presented testimony of a psychologist who described appellant as an individual who possessed average intelligence, with no evidence of a mental disorder, who was motivated both academically and occupationally, with a "good" attendance and scholastic record at school, who preferred to avoid trouble, who was "feeling" oriented, and who had no previous disciplinary problems or prior arrests. Testimony by appellant's mother and the custodian of records for the Philadelphia Board of Education confirmed much of the psychologist's testimony. However, upon cross-examination of these witnesses, it was determined that appellant occasionally got into fights, had once been suspended from school, had several unexcused absences from school, and had no significant work history. More importantly, the psychologist testified that:

I asked him if he felt he would fall apart or be taken advantage of in an adult facility. He indicated that he

felt that he could handle himself in an adult institution. My findings agree with that, that he probably would not deteriorate or show any significant emotional problem.

(N.T., June 4, 1981, at 7–8).

I don't think he really has a strong need for counseling, except perhaps in terms of that cautious attitude.

(N.T., June 4, 1981, at 9).

Q   Is there anything about the defendant that you think would require any of the special provisions of the juvenile system, sir, as opposed to the adult system?

A   Well, as I have expressed before, in the juvenile system, a primary part of the treatment and of the approach is based around education and training, whereas in the adult system that's a fringe benefit.  So while he might be able to get those things in the adult system, they are a lot less readily available, whereas if he were in the juvenile system, they would insist—places like St. Gabriel's and Glen Mills structure their program around education, vocational training and counseling.  So in that sense I think he would meet those needs far better than in the adult system.

Q   Other than that, though, there is nothing that he really needs that the juvenile system would provide and that the adult system would not provide?

A   Other than that, no, to my knowledge there is nothing, except that, as I say, I think he could be managed and supervised in a juvenile setting.  Above and beyond what I have mentioned, there would be no specific need that the juvenile system would fulfill and that the adult system would not fulfill.

(N.T., June 4, 1981, at 12–13).

The Commonwealth's witness, who was Chief of the Juvenile Court Unit, testified that appellant would be offered about three times as many educational and vocational opportunities in an adult facility such as Camp Hill as he would be in a juvenile facility.  (N.T., June 19, 1981, at 5–6).

Considering all of the above, as well as the facts surrounding the circumstances of the murder itself, and the fact that appellant's co-defendant was an adult, we find that appellant's "need for care, guidance and control as a juvenile is outweighed by the state and society's need to apply legal restraint and discipline as an adult." *Commonwealth v. Romeri, supra,* 314 Pa.Super. at 294, 460 A.2d at 1146. The lower court's decision to retain jurisdiction over the case was reasonable and will not be disturbed on appeal. There has been absolutely no showing that appellant's need for juvenile care and rehabilitation, given the time limitations applicable to juvenile cases, outweighed society's interest in adult prosecution and punishment.

We find appellant's remaining issue to be meritless. Appellant urges us to hold that the lower court erred when it failed to grant a mistrial or give cautionary instructions because of alleged prosecutorial misconduct during summation to the jury. Specifically, appellant draws our attention to three statements made by the prosecutor.

It is well established that a district attorney must have reasonable latitude in presenting a case to the jury and that he must be free to present his arguments with "logical force and vigor." *Commonwealth v. Smith,* 490 Pa. 380, 416 A.2d 986 (1980), quoting *Commonwealth v. Cronin,* 464 Pa. 138, 143, 346 A.2d 59, 62 (1975). His remarks to the jury may contain fair deductions and legitimate inferences from the evidence presented during the testimony. *Commonwealth v. Fairbanks,* 453 Pa. 90, 306 A.2d 866 (1973); *Commonwealth v. Stevens,* 276 Pa.Super. 428, 419 A.2d 533 (1980). He may always argue to the jury that the evidence establishes the defendant's guilt. *Commonwealth v. Capalla,* 322 Pa. 200, 185 A. 203 (1936). It is also well established that a prosecutor may not offer his personal opinion as to the guilt of the accused either in argument or in testimony from the witness stand. *Commonwealth v. DiNicola,* 503 Pa. 90, 468 A.2d 1078 (1983); *Commonwealth v. Smith, supra; Commonwealth v. Kuebler,* 484 Pa. 358, 399 A.2d 116 (1979); *Commonwealth v.*

*Pfaff,* 477 Pa. 461, 384 A.2d 1179 (1978); *Commonwealth v. Cronin, supra; Commonwealth v. Russell,* 456 Pa. 559, 322 A.2d 127 (1974).

■ However, as we recently stated:

"[N]ot every intemperate or uncalled for remark by the prosecution requires a new trial." *Commonwealth v. Youngkin,* [285 Pa.Super. 417, 430], 427 A.2d 1356, 1362 (1981). *See also Commonwealth v. Goosby,* 450 Pa. 609, 611, [301 A.2d 673, 674] (1973). Although a prosecutor's trial conduct must be neither vindictive nor in any manner influence the jury by arousing their prejudices, *Commonwealth v. Starks,* 479 Pa. 51, 56, [387 A.2d 829, 831] (1978), "[c]omments by the district attorney do not constitute reversible error unless the unavoidable effect of such comments would be to prejudice the jury, forming in their minds fixed bias and hostility toward the defendant so that they could not weigh the evidence objectively and render a true verdict." *Commonwealth v. Van Cliff,* 483 Pa. [576], 582, 397 A.2d 1173, [1176] (1979), quoting *Commonwealth v. McNeal,* 456 Pa. 394, 400, [319 A.2d 669, 673] (1974).

*Commonwealth v. Lacy,* 324 Pa.Super. 379, 383, 471 A.2d 888, 890 (1984). *See also, Commonwealth v. Upsher,* 497 Pa. 621, 627, 444 A.2d 90, 93 (1982).

Furthermore, the prejudicial effect of the prosecutor's remarks must be evaluated in the context in which they occurred. *Commonwealth v. DiNicola, supra* 503 Pa. at 102, 468 A.2d at 1084; *Commonwealth v. Smith, supra; Commonwealth v. Perkins,* 473 Pa. 116, 373 A.2d 1076 (1977). Also, we note that:

[W]hether this standard has been violated by the language of the district attorney is not in the first instance our decision to make. It is the duty of the trial judge to rule upon the comments; this Court is limited in its review to whether the trial court abused its discretion.

*Commonwealth v. Simon,* 432 Pa. 386, 394, 248 A.2d 289, 292 (1968).

46

The prosecution's primary witness against appellant was Darryl Lamb, a friend and classmate of appellant and an eyewitness to the murder and robbery. During his closing argument to the jury, appellant's trial counsel vigorously attacked Mr. Lamb's credibility, and attempted to argue that Mr. Lamb had testified falsely because he and appellant belonged to different "corners" or "gangs." Following objection by the prosecutor, defense counsel continued to attack Mr. Lamb's credibility by suggesting that Mr. Lamb was under pressure to testify against appellant, and that he was therefore motivated to lie on the witness stand. During rebuttal, the prosecutor argued that Mr. Lamb was credible and had no motive to lie, "because he's known [appellant] for five years, because he has known the [co-defendant] for some time before that. Because he's got to live in the same neighborhood." (N.T., Trial, at 399).

■ Appellant objects to the last statement as an expression of personal opinion by the prosecutor. We, like the lower court, view the statement as a reasonable inference and fair deduction based upon evidence adduced at trial as to the relationship between appellant and Mr. Lamb. Both appellant's and his co-defendant's addresses had been testified to, and that Mr. Lamb lived nearby could be fairly deduced from his testimony.[5]

■ Likewise, the prosecutor's remark concerning the fact that the victim's pockets were empty[6] was loosely based upon testimony of record. Appellant and Wharton

5. Apparently, appellant, his co-defendant and Mr. Lamb all lived within two blocks of each other at the time of this incident.

6. The prosecutor's exact statement was as follows:
   Robbery is basically a forceful theft, a forceful taking from somebody else, the property he has.
   When Officer Addlesburger testified in this courtroom and he said that he picked up the body of the deceased and transported him to Temple Hospital, he found a bus ticket in his pocket. A bus ticket that brought him from San Francisco to Philadelphia. To visit his friends and his family for Christmas. A bus ticket. Nothing else was said. A man doesn't travel across country without money in his pocket.
   (N.T., Trial, at 402).

went through the victim's pockets after he was stabbed. A set of keys and a cap were found lying on the street near the victim. The victim lived in San Francisco, was in Philadelphia to visit his sister for the holidays, and was identified by a bus ticket found on his body. Finally, the victim had just come out of a store before the incident.

The prosecutor inferred that since most people travel with money and since the victim was found without any money on his person, he must have been robbed. We find this inference to be somewhat tenuous and speculative. Even though the statement falls on the borderline of permissibility, we find, nonetheless, that its impact on the jury was not so prejudicial as to require the trial court to declare a mistrial, or to require us to reverse the judgment of sentence and remand for a new trial.

The remaining statement of the district attorney is likewise not tantamount to prosecutorial misconduct warranting the grant of a new trial. The district attorney was again discussing the charge of robbery and stated:

There is no separate section of the code on attempted robbery. Robbery is either the actual successful completion of the crime or an attempt to do so. That's robbery. If you believe Darryl Lamb when he said that Mr. Brown was next to Mr. Wharton, when Mr. Wharton tripped him and then was running after him swinging at him a couple of times and then after coming back and running past him, after the defendant—excuse me, the decedent had been stabbed by Mr. Wharton, and then Mr. Lamb said that Mr. Brown went through the pockets of the deceased, that's robbery. Whether he got anything or not, it's robbery. That's the law.

(N.T., Trial, at 406).

Appellant argues that these statements were the prosecutor's personal opinion, and amounted to an invasion of the province of the jury. We read the prosecutor's statement not so much as a personal opinion of the guilt of appellant, but as an argument that the evidence proves appellant guilty as charged. *See Commonwealth v. Joyner*, 469 Pa.

333, 365 A.2d 1233 (1976). The argument is more properly characterized as advocating conclusions which the jury could properly draw themselves from the evidence presented. It was made clear to the jury from repeated statements made by both the prosecution and defense counsel that nothing said by either was to be considered as evidence by the jury. (N.T., Trial, at 77, 357–58, 360, 379–80, 383–84, 427–28). The jury was also cautioned by the judge on that point. (N.T., Trial, at 70–71, 379, 460–61). Furthermore, the court carefully charged the jury as to the correct law on robbery. (N.T.. Trial, at 475–77). We believe that any possible prejudice derived from the prosecutor's statement was successfully neutralized by these other statements by the attorneys and the trial court.

Therefore, finding neither of appellant's issues on appeal to contain merit, we affirm the judgment of sentence of the lower court.

Judgment of sentence affirmed.