J. S55006/15

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| KENNETH JAMES TOLMAN, | : | No. 1576 WDA 2014 |
| | : | |
| Appellant | : | |

Appeal from the PCRA Order, August 27, 2014,
in the Court of Common Pleas of Allegheny County
Criminal Division at No. CP-02-CR-0007007-2007

BEFORE: FORD ELLIOTT, P.J.E., BENDER, P.J.E., AND STRASSBURGER, J.*

MEMORANDUM BY FORD ELLIOTT, P.J.E.: **FILED NOVEMBER 16, 2015**

Kenneth James Tolman appeals from the order filed in the Court of Common Pleas of Allegheny County which dismissed his petition filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546.

On December 5, 2006, Agent Lisa Ceh of the Pennsylvania Office of Attorney General ("OAG") entered a Yahoo! online chatroom entitled "Pennsylvania 5." (Notes of testimony, 6/9-12/09 at 243.) Agent Ceh was working in an undercover capacity as part of her duties with the OAG Child Predator Unit. Agent Ceh adopted a fictitious persona of "Kaylee Miler," a 13-year-old girl living in Cranberry Township. (*Id.* at 220.) "Kaylee's" screen name was pttsweetii2011. In this chat room, appellant, using the

---

* Retired Senior Judge assigned to the Superior Court.

screen name gato12201220,[1] engaged pttsweetii2011 in conversation and they exchanged biographical information. [P]ttsweetii2011 immediately identified herself as a 13-year-old girl. (*Id.* at 295.) Appellant nevertheless asked pttsweetii2011 if she was home alone and whether she had a web cam or a photo he could see. He stated that he had a web cam and that he was naked. (*Id.* at 297.) He asked her if she ever had sex. When she said "no" he asked: "Do you want to have sex?" and "do you masturbate?" (*Id.* at 298-299.) He asked her: "you ever have a boy touch you before? . . . was he hard? . . . did he cum? . . . he touch your pussy?" (*Id.* at 299-300.) Appellant then stated: "I would let you touch me if you wanted." (*Id.* at 301.) He stated: "I would lick your pussy if you let me." (*Id.* at 301.) Appellant then asked: "Can you sneak out now?" (*Id.* at 303.) Appellant then adjusted his web cam to broadcast himself to pttsweetii2011 masturbating and ejaculating. (*Id.* at 325, 359.) Appellant stated he wanted to meet pttsweetii2011 "some place quiet and safe." (*Id.* at 321.) [P]ttsweetii2011 again stated that she was 13 and asked appellant if that "was okay" to which appellant replied "Yep." (*Id.* at 322.)

After that initial chat on December 5, 2006, Agent Ceh went on maternity leave, so pttsweetii2011 did not re-enter the chat room for approximately four months. When pttsweetii2011 returned to the chat room

---

[1] Appellant's profile name was "Bob Robertson." There was no dispute that appellant was the individual communicating under the screen name of gato12201220.

on April 4, 2007, she was again contacted by appellant. She reiterated that she was 13 years old. At appellant's request, Agent Ceh, in the guise of her undercover persona, sent him two photographs of herself; one at age 12 and one at age 13. "Kaylee" also mentioned school, homework, chores, and various things she was not permitted to do because of her age. (*Id.* at 286-287.)

Appellant expressed an interest in meeting "Kaylee" for the purpose of engaging in sexual activity. Appellant asked pttsweetii2011 if she wanted to be his girlfriend and asked her if she could "get out now?" (*Id.* at 336.) Appellant again stated that he was naked, and asked pttsweetii2011 to "let me pick you up now" so he could see her nude. (*Id.* at 338.) Appellant made plans to meet pttsweetii2011 later that week on Tuesday, April 10, 2007, at 9:30 a.m. at the Cranberry Mall so he could teach her how to kiss while they were nude, she could watch him masturbate in person, and she could sit on his lap while they kissed. (*Id.* at 355.) Appellant, for the second time, activated his Web-cam and broadcasted himself to pttsweetii2011 masturbating and ejaculating on his desk. (*Id.* at 358.)

On Sunday, April 8, 2007, appellant sent pttsweetii2011 three off-line messages asking her if she could meet on Monday, April 9, 2007. On Monday, April 9, 2007, appellant asked pttsweetii2011 if she could meet that day around noon. Later, appellant asked pttsweetii2011 if she just wanted to get an ice cream. (*Id.* at 375.) Later on that same day, appellant

contacted pttsweetii2011 and asked her if she wanted to watch him "rubbing his cock." (*Id.* at 378.) Appellant then broadcasted himself for the third time to pttsweetii2011 via webcam while masturbating. (*Id.* at 379.)

On April 27, 2007, appellant, a radiology resident at UPMC, was arrested at Children's Hospital and charged with three counts of unlawful contact with a minor; three counts of criminal use of communication facility, and 3 counts of criminal attempt-unlawful contact with a minor.[2]

Appellant's first trial resulted in a hung jury. His second trial took place on June 9-12, 2009. The entire transcript of the chats was read to the jury. The trial court did not allow the jury to view the three 30-minute Web-cam videos in their entirety because it would be unduly prejudicial to appellant. Instead, the trial court permitted an editorial one-minute sampling of each video to be shown to the jury. (*Id.* at 309.) The trial court allowed the Commonwealth to present evidence of the actual length of each video. (*Id.* at 310.) Appellant testified in his own defense. Appellant stated that he believed that he was chatting with another adult who was role playing in a sexual fantasy.

On June 12, 2009, the jury returned with a verdict of guilty on all counts with the exception of one count of criminal attempt which was

---

[2] 18 Pa.C.S.A. § 6318(A)(4), 18 Pa.C.S.A. § 7512(A), and 18 Pa.C.S.A. §§ 901(a)/6318(a)(4) respectively.

withdrawn before trial. Appellant received a sentence at Count 1 of 6 to 12 months' incarceration and at Count 2, a sentence of 6 to 12 months' incarceration to run consecutively with Count 1, plus four years of probation. No further penalty was assessed on the remaining counts. Appellant was also ordered to register as a sex offender for life. Post-sentence motions were timely filed and denied on September 30, 2009. A timely notice of appeal was filed, and on April 21, 2011, this court affirmed appellant's judgment of sentence. A petition for allowance of appeal was filed on behalf of appellant on May 23, 2011. The petition was denied on December 15, 2011.

On December 4, 2012, appellant filed a **pro se** PCRA petition. On December 12, 2012, the court appointed counsel to represent appellant. On June 16, 2014, an amended PCRA petition was filed. No evidentiary hearing was held. By order dated March 11, 2015, the trial court dismissed appellant's PCRA petition. Appellant raises the following issues on appeal:

I. WAS MR. TOLMAN DENIED EFFECTIVE ASSISTANCE OF COUNSEL AT TRIAL AND ON APPEAL BY VIRTUE OF SEVERAL INSTANCES OF TRIAL COUNSEL'S ACTS OR OMMISSIONS [SIC] WHICH INDIVIDUALLY AND/OR COLLECTIVELY PREJUDICED HIM AT TRIAL?

a) DID THE PROSECUTOR IMPROPERLY ARGUE HIGHLY INFLAMMATORY "FACTS" THAT NOT ONLY WERE NOT IN EVIDENCE, BUT HAD BEEN SPECIFICALLY EXCLUDED BY THE

COURT, THEREBY THWARTING THE ABILITY OF THE JURY TO RENDER A FAIR AND ACCURATE VERDICT?

b) DID THE PROSECUTOR COMMIT MISCONDUCT WHEN HE REPEATEDLY RIDICULED THE DEFENSE?

c) WAS MR. TOLMAN DEPRIVED OF A FAIR TRIAL AND IMPARTIAL VERDICT BY THE PROSECUTOR'S CLOSING ARGUMENT THAT IMPROPERLY ASKED THE JURY TO "SEND A MESSAGE" WITH ITS VERDICT, BUT THE SUPREME COURT HAS REPEATEDLY HELD THAT THIS TYPE OF ARGUMENT IS PROHIBITED AND THAT IT CAUSES *PER SE* PREJUDICE.

II. DID THE PCRA COURT ERR IN NOT HOLDING AN EVIDENTIARY HEARING?

Appellant's brief at 5-6.

In PCRA appeals, our scope of review "is limited to the findings of the PCRA court and the evidence on the record of the PCRA court's hearing, viewed in the light most favorable to the prevailing party." ***Commonwealth v. Sam***, 952 A.2d 565, 573 (Pa. 2008) (internal quotation omitted). Because most PCRA appeals involve questions of fact and law, we employ a mixed standard of review. ***Commonwealth v. Pitts***, 981 A.2d 875, 878 (Pa. 2009). We defer to the PCRA court's factual findings and credibility determinations supported by the record. ***Commonwealth v.***

*Henkel*, 90 A.3d 16, 20 (Pa.Super. 2014) (*en banc*). In contrast, we review the PCRA court's legal conclusions *de novo*. *Id.*

Appellant's first three issues assert ineffective assistance of trial counsel. "It is well-established that counsel is presumed effective, and [a PCRA petitioner] bears the burden of proving ineffectiveness." *Commonwealth v. Ligons*, 971 A.2d 1125, 1137 (Pa. 2009); *see also Commonwealth v. Pierce*, 527 A.2d 973, 975 (Pa. 1987) ("We . . . presume that counsel is acting effectively."). To prevail on an ineffective assistance of counsel (IAOC) claim, a PCRA petitioner must plead and prove by a preponderance of the evidence that (1) the underlying legal claim has arguable merit; (2) counsel had no reasonable basis for acting or failing to act; and (3) the petitioner suffered resulting prejudice. *Commonwealth v. Baumhammers*, 92 A.3d 708, 719 (Pa. 2014), citing *Pierce*, 527 A.2d at 975-976. A petitioner must prove all three factors of the "*Pierce* test," or the claim fails. *Id.* In addition, on appeal, a petitioner must adequately discuss all three factors of the "*Pierce* test," or the appellate court will reject the claim. *Commonwealth v. Fears*, 86 A.3d 795, 804 (Pa. 2014).

First, appellant takes issue with three statements made by the prosecutor during closing arguments which appellant asserts deprived him of a fair trial. He contends that trial counsel was ineffective because he failed to object or request a curative instruction.

It is well established that a prosecutor, just as a defense attorney, must have reasonable latitude in presenting a case to the jury and must be free to present his or her arguments with "logical force and vigor." *Commonwealth v. Smith*, 416 A.2d 986 (Pa. 1980), quoting *Commonwealth v. Cronin*, 346 A.2d 59, 62 (Pa. 1975). Counsels' remarks to the jury may contain fair deductions and legitimate inferences from the evidence presented during the testimony. *Commonwealth v. Fairbanks*, 306 A.2d 866 (Pa. 1973); *Commonwealth v. Stevens*, 419 A.2d 533 (Pa.Super. 1980). The prosecutor may always argue to the jury that the evidence establishes the defendant's guilt, *Commonwealth v. Capalla*, 185 A. 203 (Pa. 1936), although a prosecutor may not offer his personal opinion as to the guilt of the accused either in argument or in testimony from the witness stand. *Commonwealth v. DiNicola*, 468 A.2d 1078 (Pa. 1983); *Commonwealth v. Pfaff*, 384 A.2d 1179 (Pa. 1978); *Cronin*, *supra*. Nor may he or she express a personal belief and opinion as to the truth or falsity of evidence of defendant's guilt, including the credibility of a witness. *Commonwealth v. Kuebler*, 399 A.2d 116 (Pa. 1979) (where defendant's version of events was branded a "big lie").

However, not every intemperate or uncalled for remark by the prosecutor requires a new trial. As we have stated many times:

> [C]omments by a prosecutor do not constitute reversible error unless the "unavoidable effect of such comments would be to prejudice the jury, forming in their minds fixed bias and hostility toward

> the defendant so that they could not weigh the evidence objectively and render a true verdict." ***Commonwealth v. Anderson***, ***supra*** at 501 Pa. [275, at] 282, 461 A.2d [208, at] 211 [1983]; ***Commonwealth v. Upsher***, 497 Pa. 621, 627, 444 A.2d 90, 93 (1982).

***Commonwealth v. Carpenter***, 515 A.2d 531 (Pa. 1986); ***Commonwealth v. D'Ambro***, 456 A.2d 140 (Pa. 1983). Furthermore, the prejudicial effect of the prosecutor's remarks must be evaluated in the context in which they occurred. ***Carpenter***, 515 A.2d 531, quoting ***Smith***, 416 A.2d at 989.

**I.**

The first statement which appellant claims was improper was where the prosecutor made reference to the fact that the jury was not shown all of the three streaming videos sent to pttsweetii2011 which showed appellant naked and masturbating.

> I would have loved to have inflamed your position by showing the videos in totality. The videos, we only showed a glimpse that represents the totality of those videos in one minute segments. We're expected as public servants to bring the evidence. Reasonable doubt? I say, prove it.
>
> . . . If we wanted to inflame, we would have showed the whole darn video . . . this isn't a whodunit . . . We all know what he did and why he was masturbating. To sexually gratify himself with the thought of chatting with a 13-year old with a little bit of pussy hair. He wanted her to sit on his lap and face forward and kiss and touch her in a safe and quiet place.

Notes of testimony, 6/9-12/09 at 580-582.

Appellant argues that these comments included facts that were not in evidence. He contends that because the Commonwealth was prohibited by the trial court from using the entire video at trial, the prosecutor was prohibited from revealing to the jury that the videos were longer than the one-minute segments. He contends that the prosecutor's argument invited the jury to look beyond what they were shown and heard in court. We disagree with appellant's argument.

In order to evaluate whether the comments were improper, we must look at the context in which they were made. **Carpenter**, 617 A.2d at 1267. During defense counsel's closing, defense counsel asked the jury to consider why the videos were played and suggested that the Commonwealth only showed the videos to inflame the passions of the jury:

> They had these visual transmissions, these horrible transmissions of him doing these sexual acts, which is no crime. Their theory was that if they play these things, no jury will ever be able to equate [sic] him because they will be so shocked of what they are seeing. Why were you shown that video? We're not disputing what's in that video, but our prosecutor here wanted you to see it. It's going to be interesting to hear what he says about why he did that. He's going to say it's an element, it's the corpus of the crime. Look, he did it and because it was patently offensive and he wanted to do something with your mind, so you couldn't judge the actual case and you couldn't listen and say that's no crime. But there's another twist as to why they thought there would never be a trial. No person or any person should have to go through having these images portrayed in court to strangers, to a gallery, to the world, it's almost unthinkable. No person should ever go through that. No person would ever

- 10 -

> go through that unless they absolutely believed they
> were innocent.

Notes of testimony, 6/9-12/09 at 569-570.

Examining the prosecutor's comments within the context of defense counsel's comments, we are convinced that appellant was not prejudiced by this portion of the Commonwealth's closing argument. The prosecutor clearly responded to defense counsel's insinuation that the only reason the videos were shown was for shock value. The prosecutor's comments were a fair response to defense counsel's suggestion that the portion they were shown constituted the entirety of the transmission. The prosecutor explained that the amount of footage the jurors were shown was much less than it could have been. The Commonwealth fairly responded to remarks made by appellant's trial counsel.

Further, the prosecutor's comments did not contain facts that were not in evidence. The trial court specifically permitted the Commonwealth to inform the jury through its witnesses that the video tapes were longer than the one-minute segments that were shown to the jury. The trial court stated:

> [Y]ou can explain it through your witness that the
> overall length of the web transmission in the first
> case is roughly half an hour. That the jury would be
> able to track the length of that by virtue of the time
> on the screen during the chat. And you can remind
> them of the cumulative total at the end of all three
> chats when you go through it.

> You can ask your witness to say, and if we were to show the complete video, what would the length of the video transmission be in this case? That will be sufficient.

*Id.* at 310.

Agent Ceh testified that the first video of appellant masturbating and ejaculating was probably 20 minutes. (*Id.* at 325.) As Agent Ceh read through the transcripts of the second two chats, it was clear from the content of the chat when the Web-cam was turned on and what appellant was doing on the video. Agent Ceh also made frequent references to the time stamp as she was reading, so that the jury was well aware of how long the videos were. Further, appellant admitted on cross-examination that the videos showed him exposing himself, showed his penis, that his penis was erect, and that he ejaculated semen. (*Id.* at 511.) By making a reference to the "whole" video, the prosecutor did not reveal anything that was not already made known to the jury through Agent Ceh's testimony and appellant's admissions. It is well settled that a prosecutor's remarks are proper if they are supported by the evidence or they contain inferences which may be reasonably derived from the evidence. *Commonwealth v. Barren*, 462 A.2d 233, 235 (Pa. 1983). Here, the comments were entirely supported by the evidence.

Next, appellant challenges the prosecutor's use of "intense vulgarity" when he used the word "pussy." Appellant claims that this was meant to prove that appellant was a sick, vile, pedophile that needed to be locked

away. (Appellant's brief at 18.) We disagree. It is entirely proper for the prosecutor to summarize the evidence presented, to offer reasonable deductions and inferences from the evidence, and to argue that the evidence establishes the defendant's guilt. ***Commonwealth v. Thomas***, 54 A.3d 332, 338 (Pa. 2012). The "intense vulgarity" of which appellant complains was nothing more than an accurate recitation of previously admitted evidence. Agent Ceh read into evidence the chats between pttsweetii2011 and appellant.

Clearly, the prosecutor's statement was nothing more than an accurate summary of the evidence presented by way of slight paraphrasing of appellant's own statements. Appellant himself chose to make this vulgar comment during his chats with Agent Ceh, and he was, therefore, the person responsible for its introduction at trial. An objection by trial counsel would have lacked arguable merit. Counsel cannot be deemed ineffective on this basis.

## II.

In his next issue, appellant challenges several comments by the prosecutor which appellant claims improperly disparaged or ridiculed appellant's defense strategy. ***Commonwealth v. Gilman***, 368 A.2d 253, 258-259 (Pa. 1977). The first statement which appellant challenges is as follows:

> You're going to have to come to the conclusion this
> is a very real case. All of our cases are real. They

> involve real people and special agents Regis Kelly and Lis Ceh, that's who they were when they took the stand and that's who they're going to be tomorrow Special Agents with the Office of Attorney General protecting and serving our community and representing our community.

Notes of testimony, 6/9-12/09 at 575.

Appellant argues that the prosecutor's comments implied that appellant's defense was not real. We do not agree. A prosecutor has reasonable latitude during his closing argument to advocate his case, respond to arguments of opposing counsel, and fairly present the Commonwealth's version of the evidence to the jury. *Commonwealth v. Hanible*, 30 A.2d 426, 465 (Pa. 2011). This statement countered defense counsel's attempt to minimize the seriousness of his conduct. During closing argument, defense counsel attempted to paint the case as less serious because there was no actual 13-year-old child on the receiving end of appellant's communications and the entire case was all an unfortunate misunderstanding over a harmless internet fantasy. While the prosecutor challenged the characterization of the conduct by appellant as harmless fantasy, he did not ridicule or denigrate appellant or his counsel. Appellant's counsel cannot be deemed ineffective for failing to make a meritless objection.

Appellant next alleges that defense counsel was ineffective for failing to object to the following statement:

> I remember back in my opening statement, I indicated to you that we had two issues in the case. Well, I stand corrected. The alpha dog came up and said no, ladies and gentlemen, we have one issue in this case. Our issue got to have that issue, take that ball and run with that issue, don't believe that for a moment.
>
> The issue in his case was the charges that we presented to you, not the defense charges that haven't even been alleged in this case. It doesn't matter that he didn't have the intent to go meet with some child or some officer to conduct an ice cream reception party at Subway. That is easy to say something after the fact. I then say to you would Ben Roethlisberger kind of "wish I had done that or that?" That changes nothing, absolutely nothing. To their credit, they didn't buy that crap. How dare he instruct you about that. That's your role. Don't let them get that ball. Hold on to your role as jurors, to find the facts based upon the competent evidence and the credibility evidence.

Notes of testimony, 6/9-12/09 at 579-580.

Appellant asserts that these statements were inappropriate because the prosecutor suggested to the jury that appellant's defense was "crap" and improper ("how dare he"). Appellant contends that under **_Gilman_**, this type of argument is impermissible because it is disparaging to a legitimate defense strategy and attacks defense counsel's integrity. We do not agree.

First, reviewing these comments in the context in which they were made, we do not agree that these comments were anything other than the prosecutor's attempt to clarify the issues for the jury. Defense counsel focused on appellant's testimony that he never really intended to meet with "Kaylee." Defense counsel stated during his closing argument: "[Appellant

is] not a predator wanting to be with a 13-year old girl. The best evidence is, he never showed up, he blew her off . . . If he was what they are trying to make him out to be, he would have shown up." (Notes of testimony, 6/9-12/09 at 559.)

The prosecutor pointed out that whether the appellant ultimately showed up or not at the planned date and time was not the issue. The issue was whether there was unlawful communication/contact with a minor and whether there was criminal use of a communication device. In the rest of the statement, the prosecutor correctly states that the jury should follow the trial court's instruction on the law and not be instructed by appellant's counsel. Neither the corrective statement of the law nor the oratorical flair of the prosecutor constituted prejudice to appellant. Once again, counsel was not ineffective for failing to make a meritless objection.

Next, appellant asserts that the following comment was in error:

> We got the records from Steel City Broadband as they supplied the Internet connection. We showed you those. There was a stipulation of facts from the witness who provided those things. We showed you the Internet connectivity bills from the Woodhawk Club, from Carol Rosey. She didn't come into the room but she came in the form of a stipulation because they couldn't discredit her. Why even bother, why even argue their defense?

*Id.* at 582.

This comment refers to the stipulation regarding the internet service provider that was entered into by the parties and did not ridicule or

- 16 -

disparage the defense. Since appellant did not deny that he was the person chatting with Agent Ceh, the prosecutor simply pointed out that why would they bother to argue that appellant was not the individual to whom the internet connection he used was registered. Having met this element of the crime of criminal use of a communication device, the prosecutor was simply expressing the confidence he had in his own case with respect to the other elements. This statement was a fair comment on the evidence, and did not prejudice appellant. Counsel's failure to object did not render him ineffective.

Lastly, as it relates to this issue, appellant alleges that the following statement should have been objected to and counsel's failure to do so constituted ineffective assistance of counsel.

> An entrapment? Don't talk about entrapment. He got on there and admitted he was in control of the Web-cam. She didn't give him the Web-cam. She didn't go ahead and send the message. He wanted to show it to her, you know, that's his thing. Buzz-Buzz, I'm not going to take any more time folks because this case was open and shut. Thank you.

*Id.* at 586.

Once again, we find this statement was a fair comment on the evidence. The prosecutor was within his rights to argue that appellant failed to establish entrapment and did so by referring to the evidence. There was no basis for objection.

**III.**

In his third issue, appellant asserts that the prosecutor committed prosecutorial misconduct which deprived appellant of his right to a fair trial because he "asked the jury to send a message to the greater community that they can't sanction what occurred in this case." (Appellant's brief at 40.) Appellant contends that the prosecutor made certain comments which constituted an improper "send a message" argument which has been forbidden by our supreme court. ***Commonwealth v. DeJesus***, 860 A.2d 102, 113-119 (Pa. 2004) (prosecutors forbidden to ask jury to send a message to the community with its verdict because it invites jurors to ignore sworn duty to decide matter exclusively upon the facts presented).

Specifically, appellant contends that the prosecutor improperly asked the jury to "send a message" when he said: "Ladies and gentlemen of the jury, you are the Commonwealth's safe haven and none of you are children." (Notes of testimony, 6/9-12/09 at 572.) "This was a real crime, committed against real people" and these "special agents with the Office of Attorney General protecting and serving our community and representing our community." (***Id.*** at 575.)

Viewing these comments in context, we find that the prosecutor did not make an impermissible "send a message" argument. First, the prosecutor never stated the words "send a message." Rather, appellant

argues that the prosecutor's other statements, taken together, amount to that. Further, defense counsel stated during his closing argument:

> The use of the word children is the Commonwealth's safe harbor in this case. What do I mean? It's whenever you're challenged you'll go to children. We get the agent on the stand and I'm asking her questions which are rather simple answers, it is either a yes or no. He went off and by saying "well, I was concerned they were protecting children here." Agent Kelly says, "I can remember Children's Hospital." What is that all about?
>
> Look, I stated this at the beginning of the trial. The reason they keep bringing up children is because it's anticipated that when a jury hears this matter, when they hear the word children that something will happen and they will not be able to evaluate the actual evidence in this case. And the reason when I asked them questions and they go off to the children thing, "I'm not going to answer your question, I'm going to top you with a children's statement." I cannot figure out what the deal is with Children's Hospital, why they are so insistent of trying to get this guy into Children's Hospital other than they need to get that in front of you. They believe you are that unsophisticated.

*Id.* at 561-562.)

The prosecutor's comments were clearly in direct response to defense counsel's allegations that the Commonwealth was using the word "children" as a "safe harbor" in order to gain an unwarranted conviction. The prosecutor appropriately countered that the jury was the Commonwealth's safe haven. The other statement was nothing other than an accurate summary of the testimony in evidence. There was no basis for an objection. Counsel cannot be held ineffective for failing to raise a meritless claim.

**IV.**

In his final issue, appellant asserts that the PCRA court erred in failing to hold an evidentiary hearing on his PCRA petition.  There is no absolute right to an evidentiary hearing on a PCRA petition, and if the PCRA court can determine from the record that no genuine issue of material fact exists, then a hearing is not necessary.  ***Commonwealth v. Jones***, 942 A.2d 903, 906 (Pa.Super. 2008).  This court must examine the issues raised in the PCRA petition in light of the record in order to determine whether the PCRA court erred in concluding that there were no genuine issues of material fact and in denying relief without an evidentiary hearing.  ***Commonwealth v. Jordan***, 772 A.2d 1011, 1014 (Pa.Super. 2011).  Here, as discussed above, it was readily apparent from the record that appellant could not demonstrate arguable merit or that he suffered prejudice from his counsel's failure to object to the Commonwealth's closing statement.  The PCRA court did not err in failing to hold an evidentiary hearing.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/16/2015

- 20 -