524 A.2d 1375

**COMMONWEALTH of Pennsylvania**

v.

**Shelby Scott ADAMS, Appellant.**

Superior Court of Pennsylvania.

Argued Jan. 21, 1987.

Filed April 28, 1987.

Stanton D. Levenson, Pittsburgh, for appellant.

John L. Brown, Jr., Assistant District Attorney, Freedom, for Com., appellee.

Before BROSKY, DEL SOLE and CERCONE, JJ.

CERCONE, Judge:

This is an appeal from a judgment of sentence entered on July 2, 1986 after a jury convicted appellant, Shelby Scott Adams, of delivery of marijuana and of conspiracy to deliver marijuana. Post-trial motions were denied and appellant was sentenced to one and one-half (1½) to five (5) years imprisonment and to pay a fine in the amount of $25,000.00.

Appellant raises the following two issues on appeal: (1) whether a valid consensual wiretapping pursuant to the Wiretapping and Electronic Surveillance Control Act, 18 Pa.C.S.A. §§ 5701 *et seq.*, requires that consent be given prior to each intercepted communication; and (2) whether statements made by the Commonwealth's attorney in his summation constituted impermissible prosecutorial misconduct. The trial court answered both of these inquiries in the negative and we affirm its order based on those findings.

From 1980 to 1984, appellant was involved with John Maruca and another co-conspirator, in an ongoing conspiracy to buy, sell and distribute marijuana. Appellant was operating out of St. Petersburg, Florida, Maruca was in Beaver, Pennsylvania, and the third conspirator was in State College, Pennsylvania. In February, 1984, Mr. Maruca was arrested on drug-related charges. Pursuant to plea bargain negotiations an agreement was reached whereby

Maruca agreed to plead guilty to one count of conspiracy and to cooperate with agents of the Office of the Attorney General of Pennsylvania in its effort to gather evidence against his cohorts. Maruca's cooperation was to be in the form of consensual wiretapping. In return, the Commonwealth promised to recommend to the court that Maruca receive a probationary sentence.

The Wiretapping and Electronic Surveillance Control Act, 18 Pa.C.S.A. §§ 5701–5726, in general, makes criminal the willful interception of any wire or oral communication. *Id.,* § 5703(1). However, the Act contains an exception at § 5704 which provides that it shall not be unlawful for:

> (2) Any investigative or law enforcement officer or any person acting at the direction or request of an investigative or law enforcement officer to intercept a wire or oral communication involving suspected criminal activities where:
>
> \*    \*    \*    \*    \*    \*
>
> (ii) one of the parties to the communication has given prior consent to such interception. However, no interception under this paragraph shall be made unless the Attorney General or a deputy attorney general designated in writing by the Attorney General, or the district attorney, or an assistant district attorney designated in writing by the district attorney, of the county wherein the interception is to be made, has reviewed the facts and is satisfied that the consent is voluntary and has given prior approval for the interception; ...

In compliance with § 5704(2)(ii), Deputy Attorney General Joseph Peters was properly designated, in writing, by the Attorney General to approve the use of consensual electronic surveillance. Peters initially conducted a personal interview with Maruca to determine if Maruca had voluntarily given his consent to the use of an electronic phone tap. After the personal interview, which satisfied Peters that Maruca's consent was voluntary a written consent form was completed and executed by Maruca. This form established a ten day time period during which the Bureau of

Narcotics Investigation and Drug Control would make electronic interceptions. All interceptions that would occur during the particular ten day period were authorized and consented to in advance. When the ten days expired, the Deputy Attorney General interviewed Maruca on the telephone to determine the voluntariness of his consent to a second ten day period of interceptions. After the interview, Maruca executed a second memorandum of consent form. This procedure was repeated until Maruca had signed six consent forms authorizing interceptions during six ten day inclusive time periods.[1] The interceptions yielded tape recordings of the five conversations which the Commonwealth played at trial.[2] Appellant's pretrial motion to suppress the tape recorded conversations was denied.

The appellant contends that suppression was required because Maruca's consent was not obtained prior to the interception of each and every taped conversation. This claim challenges the validity of blanket consents whereby an informant can consent, in advance, to more than one interception. The primary weakness in appellant's position is that nowhere does he allege that Maruca's consent was, at any time, coerced or involuntary. Maruca's testimony at the suppression hearing not only shows that he voluntarily signed each memorandum of consent, but also that he was aware of his right to withdraw his consent at any time. Each time he purposely engaged one of his conspirators in conversation, knowing that the conversation was being taped, he did so of his own free will.[3]

Therefore, appellant's argument becomes one of technical statutory construction. He relies, as sole support, on the unreported Common Pleas Court opinion in *Commonwealth v. Wintrode and Clark,* Court of Common Pleas, Erie

1. Appellant concedes that every interception occurred during a period of time when one of the written consent forms was in effect.

2. Some of the tape recordings were obtained through the use of the telephone tap and some through the use of a body recorder.

3. A person's consent is not rendered involuntary because his cooperation has been obtained in return for a promise of lenient treatment, or because the motivations for it were altruistic or self-seeking. *Commonwealth v. Clark,* 349 Pa.Superior Ct. 255, 502 A.2d 1375 (1985).

County, Criminal Division, No. 1035, 1228 and 1347 of 1983, *aff'd in part and rev'd in part on other grounds*, 349 Pa.Superior Ct. 255, 502 A.2d 1375 (1986). The Superior Court, on review of that case, did not reach the issue here in question, finding that the informant was subject to pressure which had the effect of overbearing his will, thereby rendering his consent coerced and invalid. As the issue in contention is not the validity of Maruca's consent but rather, whether he gave his express consent often enough, the Superior Court decision in *Clark* provides little guidance. Insofar as appellant bases his argument on the holding and reasoning given by the trial court in *Clark*, we turn our attention to that trial court opinion.

The trial court in *Clark* held that consent must be obtained prior to the interception of each communication, and each communication not so consented to must be suppressed. The primary reason for so holding was the court's observation that § 5704(2)(ii) "speaks in terms of the singular" where it states that electronic surveillance is permissible where "... one of the parties to the *communication* has given prior consent to such *interception.*" The trial court compares this language to the plural reference contained in § 5712 (applying to non-consensual, court ordered interception) which provides, "... no order entered under this section shall authorize the interception of wire or oral *communications* for a period exceeding 20 days." Based upon the above-quoted language, the trial court concluded that a party can only give consent for the interception of one conversation at a time.

This conclusion is belied by the rule of statutory construction and interpretation found at 1 Pa.C.S.A. § 1902 which states in relevant part:

§ 1902. **Number; gender; tense**

The singular shall include the plural, and the plural, the singular.

Therefore, the trial court in *Clark* was not free to attach such significance to the presence or absence of an "s" at the end of the word "communication." Furthermore, statutory words and phrases are to be construed according to

rules of grammar and according to their common and approved usage. 1 Pa.C.S.A. § 1903. In the English language plural nouns are often expressed by a word that remains grammatically singular. The word "communication" can readily refer to one brief conversation or just as easily to conversations held over the course of a lifetime. Therefore, we find the trial court's analysis in the *Clark* case unpersuasive.

■■■ In cases involving consent surveillance the only litigable issue, as a general rule, is whether the consenting party gave valid consent to have his conversation overheard. J. Carr, *The Law of Electronic Surveillance* § 3.5(d), at 3–83 (1986). The essential concern is to defeat the effect and deter the use of pressure initiated by the police for the purposes of overbearing the will of the consenting party. *See Commonwealth v. Clark, supra,* 349 Pa.Superior Ct. at 263, 502 A.2d at 1379. There is no statutory requirement that consent be authorized prior to every conversation nor does § 5704(2)(ii) set forth a specific length of time during which a consent remains viable. All that is required is that the informant acts consensually, that his consent is voluntary, and that the informant acts under the direction of an investigative or law enforcement officer to intercept oral communications involving suspected criminal activities. *Commonwealth v. Rodriquez,* 356 Pa.Superior Ct. 543, 515 A.2d 27 (1986).

We note that § 5712(b), which applies to non-consensual, court ordered interception, provides that no order shall authorize the interception of wire or oral communications for any period exceeding twenty days. Since surveillance conducted with the consent of a party to the conversation is not subject to the exacting standards of authorization required for non-consensual surveillance, *Commonwealth v. Checca,* 341 Pa. Superior Ct. 480, 491 A.2d 1358 (1985), we find that the written consent forms authorizing electronic surveillance for ten day periods, adequately safeguarded the protections to which all involved parties were entitled.

■■■ We believe that a person who has not been the subject of any threats or coercion is permitted to consent in

advance to the recording of more than one conversation. Furthermore, where the informant is cognizant of his right to withdraw his consent, yet he chooses to go ahead with a conversation fully aware that law enforcement officials are listening, we perceive no danger to the legislature's concern that consent to electronic surveillance be voluntary. Our holding should not be interpreted to mean that once valid consent has been given, it remains in effect for as long as the informant engages in conversations which he knows are being taped; rather, by this Opinion, we uphold as consistent with the Pennsylvania Wiretap Act, the procedure implemented by the Office of the Attorney General in this case, *i.e.*, the consistent interviewing of the informant to ensure that his consent was being given voluntarily and the use of memorandums of consent which authorized interceptions for ten day periods. We hold that the Wiretapping and Electronic Surveillance Control Act does not require that consent be given prior to each recorded communication.[4]

We find that the record supports the suppression court's factual findings and the legitimacy of the inferences and legal conclusions drawn from those factual findings. *See Commonwealth v. Reddix*, 355 Pa.Superior Ct. 514, 513 A.2d 1041 (1986). Accordingly, the trial court's denial of appellant's motion to suppress is affirmed.

Appellant's second and final argument is that the trial court erred in refusing his motion for mistrial on the

---

**4.** In interpreting an analogous federal statute, Title III of the Omnibus Crime Control and Safe Streets Act, 18 U.S.C. §§ 2510–2520, the United States District Court of Pennsylvania also concluded that where a series of calls is being made, it is not necessary to request consent from the informant for each call separately. *United States v. Baynes*, 400 F.Supp. 285 (E.D.Pa.1975), *aff'd mem.*, 517 F.2d 1399 (3rd Cir.1975). The federal statute provides:

It shall not be unlawful under this chapter for a person acting under color of law to intercept a wire or oral communication, where such person is a party to the communication or one of the parties to the communication has given prior consent to such interception.

18 U.S.C. § 2511(2)(c).

grounds that statements made by the Commonwealth's attorney in his summation constituted impermissible prosecutorial misconduct. We find that the remarks in question did not deny appellant a fair trial and accordingly affirm.

In his closing argument, the district attorney made the following allegedly objectionable statements.

> This was a business that was organized by Latshaw and Adams. They went on for years that way. Adams would ship to Latshaw. Latshaw would then ship to Beaver County. Neither of these individuals hardly ever visited Beaver County except to pick up the money from the citizens of Beaver County. Most of the time they didn't bother doing that. They had it sent out to them or had people come to them, but they were taking the money out of Beaver County. They weren't even part of this. They didn't even have to see what was being caused by this massive influx of drugs that they were sending to us.

In response to trial counsel's motion for mistrial, the trial judge included in his jury instructions a cautionary reminder that the law

> applies to all persons throughout our Commonwealth, whether they be Beaver County residents or not or whether they are not citizens of this country. Our law and its protections apply to all persons equally. You should not be prejudiced against either of the defendants merely because they are nonresidents of Beaver County.

Nothwithstanding the court's curative instructions, appellant alleges that the prosecutor's arguments were an invitation to convict appellant merely because he resided outside of Beaver County and was taking money from the citizens of Beaver County.

■ In Pennsylvania, the law is clear that comments by the district attorney do not constitute reversible error "unless the unavoidable effect of such comments would be to prejudice the jury, forming in their minds fixed bias and hostility toward the defendant so that they would not weigh the evidence objectively and render a true verdict." *Commonwealth v. Van Cliff*, 483 Pa. 576, 582, 397 A.2d 1173, 1176 (1979); *Commonwealth v. Lacy*, 324 Pa. Superior Ct.

379, 383, 471 A.2d 888, 890–91 (1984). Furthermore, we recognize that:

> Whether this standard has been violated by the language of the district attorney is not in the first instance our decision to make. It is the duty of the trial judge to rule upon the comments; this Court is limited in its review to whether the trial court abused its discretion.

*Commonwealth v. Brown,* 332 Pa. Superior Ct. 35, 45, 480 A.2d 1171, 1176–77 (1984) *quoting Commonwealth v. Simon,* 432 Pa. 386, 394, 248 A.2d 289, 292 (1968).

■ Evaluating the prosecutor's remarks in the context in which they occurred, coupled with the curative instructions of the court, *see Commonwealth v. Lacy, supra* 324 Pa.Superior Ct. at 384, 471 A.2d at 891, we find that these remarks were not so inflammatory and prejudicial as to require a new trial.

Judgment of sentence is affirmed.

BROSKY, J., files a concurring opinion.

BROSKY, Judge, concurring:

I concur in the result which has been reached by the majority. I do not dispute the majority's resolution of either issue on the merits. I write separately only to indicate my position that the second contention on appeal pertaining to prosecutorial misconduct has not been properly preserved below.

The procedure for objecting to allegedly improper remarks, so as to preserve the objection as an assignment of error for purposes of post-trial motions and appeal, is well established in Pennsylvania. The complaining counsel must call the court's attention to the objectionable language by requesting the withdrawal of a juror, or, in the alternative, a remedial instruction to the jury. If the court elects to give a remedial instruction, and counsel still feels that the taint created by the improper remarks has not been removed, he must then *renew* his objection, and again request the withdrawal of a juror; he cannot "by his silence, be permitted to leave the impression that he is satisfied with

the court's action in the premises, and, after the rendition of an adverse verdict, have the verdict set aside, or the judgment reversed by the appellate court." *Libengood v. Pennsylvania R. Co.*, 358 Pa. 7, 11, 55 A.2d 756, 758 (1947); also see *Springer v. County of Allegheny*, 401 Pa. 557, 165 A.2d 383 (1960) and *Commonwealth v. Rough*, 275 Pa.Super. 50, 61 n. 5, 418 A.2d 605, 611 n. 5 (1980).

The record below reveals that counsel for appellant did not object to the curative remarks included in the trial court's jury instructions as insufficient to cure the prejudice created by the prosecutor's allegedly objectionable statements. Moreover, the trial court's decision to address the merits of this issue in its opinion does not excuse the failure of counsel to make the appropriate objection. This court has held that the failure to properly preserve an issue for purposes of appellate review is not excused where the trial court has chosen to render a decision on the merits anyway. See *Commonwealth v. Gregory*, 309 Pa.Super. 529, 455 A.2d 1210 (1983).

Hence, I would hold that appellant's second contention on appeal has been waived, despite the trial court's decision to address the merits of the issue in its opinion.