IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Michael A. Caputo and         :
Janice M. Caputo               :
                                 :
           v.             : No. 207 C.D. 2019
                                 : Argued: October 4, 2019
Allegheny County Health       :
Department,                  :
                                 :
            Appellant    :

BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
                  HONORABLE MICHAEL H. WOJCIK, Judge
                  HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK                            FILED: October 25, 2019

Allegheny County Health Department (Department) appeals an order of the Court of Common Pleas of Allegheny County (trial court) that "reversed, set aside, and vacated" an administrative decision of the Department's Hearing Officer that upheld the Department's denial of Michael A. Caputo (Mr. Caputo) and Janice M. Caputo's (collectively, Landowners) request for a variance from the Department's plumbing regulations to connect a private residence to a common sewer lateral (CSL) and granted their variance request. The Department argues that the trial court exceeded its scope and standard of review and erred in determining that the Hearing Officer's decision was contrary to the law and not supported by substantial evidence. Upon review, we reverse the trial court.

# I. Background

Landowners, who are husband and wife, own adjacent properties at 6410 and 6414 Adelphia Street in Pittsburgh's Morningside neighborhood. Landowners constructed a private residence at 6410 Adelphia Street; 6414 had an existing residence. During construction, Landowners discovered that there is no public sewer line located on the portion of Adelphia Street directly in front of Landowners' properties. Upon determining that connecting to the nearest public sewer line was impractical, Landowners pursued connecting 6410 to an existing CSL servicing 6414 and 6420 Adelphia Street. To that end, Landowners filed a variance request with the Department seeking relief from the Department's Rules and Regulations for Plumbing and Building Drainage, Article XV, known as the Plumbing Code of the Allegheny County Health Department (Plumbing Code). Original Record (O.R.) at 279. The Department denied the request on November 6, 2017, and Landowners appealed.

The Department's Hearing Officer held an administrative hearing. At the hearing, Landowners presented the testimony of Mr. Caputo, as a fact witness, and Stephen Emery, Esq., Head Underwriter/Area Manager, Chicago Title Insurance, as an expert witness, as well as exhibits. The Department offered the testimony of Andrew F. Grese, the Department's Plumbing Program Manager, as a fact witness, and exhibits.

Based on the testimony and evidence presented, as well as credibility determinations made, the Hearing Officer found as follows. Landowners purchased 6410 and 6414 on the same deed, subdivided the property, and built a house on 6410. During construction, Landowners discovered that there was no public sewer system access to 6410. Landowners' property at 6414 and the

property at 6420, which is owned by Richard Inesso (Mr. Inesso) and Annette Inesso (collectively, Neighbors),[1] are connected to an existing CSL. Landowners sought permission to connect 6410 to the existing CSL because connecting to the nearest public sewer line is impractical. To do this, Section AC-701.3.1 of the Plumbing Code requires that all properties on a CSL enter into a mutual maintenance agreement.

In September 2017, a conference was held with Landowners, Neighbors, Department personnel, and their respective counsel, as well as the Hearing Officer. At this conference, Landowners and Neighbors agreed to enter into an agreement for the maintenance of the existing CSL between 6414 and 6420. However, Mr. Inesso stated that he would not allow the property at 6410 to enter into a mutual maintenance agreement between 6414 and 6420. Mr. Inesso passed away after the conference but before the administrative hearing. In October 2017, Landowners and Neighbors recorded a CSL Maintenance Agreement (Maintenance Agreement) for the mutual maintenance of the existing CSL between 6414 and 6420, but not 6410. Landowners also recorded a Declaration of Easement and Covenants (Declaration), which provided for the maintenance and repair of a new CSL extending from 6410 to 6414, where it would then connect to the existing CSL.

Shortly thereafter, Landowners requested a variance from the Department to extend the existing CSL serving 6414 and 6420 to connect the property at 6410.[2] The Department denied the request because an agreement

---

[1] Neighbors did not participate in the proceedings.

[2] To illustrate:

**(Footnote continued on next page…)**

adequately specifying maintenance responsibilities for the proposed connection was not recorded in the deeds of 6410, 6414 and 6420. O.R. at 95.[3] Landowners again appealed.

Before the Hearing Officer, Landowners argued that the combination of the Maintenance Agreement and the Declaration sufficiently satisfied the variance requirements of Section AC-701.3.1 of the Plumbing Code in that every inch of the CSL extending from 6410 to 6414 to 6420 is accounted for by a maintenance agreement. In support, Landowners presented Mr. Emery, who was accepted as an expert in real estate issues, including sewer and utility easements, covenants, declarations and mutual maintenance agreements. Mr. Emery opined that the Maintenance Agreement and Declaration, when taken together, are tantamount to one agreement amongst property owners in terms of maintenance obligations. However, Mr. Emery hedged, "Well, I – I'm not sure I can speak to the [] Department's view of it." Hearing Officer's Decision, 5/29/18, at 8. Although Mr. Emery is an expert on such issues as sewer and utility easements and mutual maintenance agreements, the Hearing Officer found that his expertise did not extend to the Department's interpretation of its regulations. The Hearing Officer found that this limited the scope of Mr. Emery's expertise.

---

**(continued…)**



[3] Because the Original Record was filed electronically and was not paginated, the page numbers referenced herein reflect electronic pagination.

The Hearing Officer interpreted Sections AC-701.3 and AC-701.3.1 of the Plumbing Code as requiring a single document. The Plumbing Code refers to the document in singular language, like "*a* mutual maintenance agreement" or "*a* document . . . adequately specifying the maintenance responsibilities of the property owners." Sections AC-701.3 and AC-701.3.1 of the Plumbing Code (emphasis added). The Hearing Officer found that this interpretation is consistent with the Department's denial of the variance. Despite recognizing that such an interpretation is strict, the Hearing Officer found it to be "reasonable, as it conforms to the letter of the law." Hearing Officer's Decision, 5/29/18, at 9. Thus, the Hearing Officer determined that the Maintenance Agreement and the Declaration did not satisfy the Plumbing Code's requirement for one mutual maintenance agreement among property owners.

Landowners also argued that the Department should have granted them a modification pursuant to its authority under Section AC-105.1 of the Plumbing Code because of the alleged impracticality of connecting to the nearest public sewer and obtaining one mutual maintenance agreement. Landowners claimed that connecting to the public sewer lines at the eastern or western terminus of Adelphia Street is not an option. The Plumbing Code authorizes the Department to "approve modifications on a case by case basis" whenever there are "practical difficulties" involved in carrying out the provisions of the Code. Section AC-105.1 of the Plumbing Code. However, the Hearing Officer determined that the power to grant modifications is discretionary, not compulsory. Thus, the Department was not required to exercise its discretion in this regard.

Finally, Landowners argued that any dispute involving ownership or use of a sewer lateral is a private matter which should be decided by the courts, not

5

the Department. They claimed that the Neighbor's stance on the ownership of the CSL was not relevant or material to the proceedings. The Hearing Officer dispelled this argument in that the Department is not defining the rights of private parties, but rather is enforcing its own regulations.

Ultimately, the Hearing Officer determined that Landowners were not entitled to a variance under the Plumbing Code and upheld the Department's denial. Landowners filed a statutory appeal with the trial court.

By order dated January 29, 2019, the trial court reversed, set aside and vacated the Hearing Officer's Administrative Order and granted the variance requested by the Landowners under Section AC-701.3.1 of the Plumbing Code. In the opinion that followed, the trial court made its own findings of fact and conclusions of law based upon the record developed before the Hearing Officer.

Specifically, the trial court found that, based on the location of the properties at 6410 and 6414 and existence of other sewers and underground utilities, a variance was necessary to connect their home to the public sewer system. Connecting to the nearest public sewer was not an option. The Department can grant a variance for a private residence to connect to a public sewer line through a private sewer lateral as long as property owners connected to the CSL enter into and record a mutual maintenance agreement. Camera footage revealed that the only properties with connections to the sewer lateral were Landowners' property at 6414 and Neighbors' property at 6420. As required by the Department, Landowners and Neighbors entered into an agreement for the maintenance of the existing CSL. The Department also requires a declaration of easement and covenants, which provides for the maintenance and repair of a new CSL extending from 6410 to 6414, where it would connect to the existing CSL.

6

Landowners recorded both documents. Landowners requested a variance from the Plumbing Code so that it could connect to the public sewer line through the existing CSL. The Department denied Landowners' request for a variance citing Section AC-701.3.1, explaining:

> In order to connect to an existing common sewer lateral, a maintenance agreement must be recorded in the deeds of all properties involved. Presently there is not an agreement adequately specifying maintenance responsibilities for the sewer recorded in the deeds of the properties located at 6410, 6414 and 6420 Adelphia Street.

Trial Court Opinion, 3/6/19, at 2.

However, the trial court determined that Landowners' request for a variance was in conformity with the intent and purpose of the Plumbing Code and would not negatively impact human or environmental health or fire safety. The Maintenance Agreement and Declaration, when viewed together, fully address the maintenance and repair responsibilities for the existing CSL and the new sewer CSL. Thus, the trial court concluded that the Hearing Officer's denial of the variance request was an abuse of discretion, not supported by substantial evidence and contrary to the law. From this decision, the Department appealed to this Court.

## II. Issues

The Department argues that the trial court exceeded its scope and standard of review by making its own findings of fact and conclusions of law based on the Hearing Officer's record. Under the appropriate review, the Hearing Officer's interpretation of the Plumbing Code was not contrary to the law and his decision to uphold the Department's denial of the variance was supported by

7

substantial evidence. Therefore, the Department argues that the trial court decision must be reversed and the Hearing Officer's decision reinstated.

### III. Discussion
### A. Scope and Standard of Review

The Department contends that the trial court erred when it exceeded its scope and standard of review by making findings of fact and conclusions of law. The law clearly defines the boundaries of appellate review when the record, as in this case, is full and complete, and the trial court does not take additional evidence. The trial court was not permitted to substitute its own judgment on the merits for that of the administrative tribunal. Thus, the trial court's decision should be set aside and reversed in its entirety.

Our review of local agency appeals is set forth in Section 754 of the Local Agency Law, 2 Pa. C.S. §754, and is dependent on the condition of the record created before the agency. Section 754 has two subsections: subsection (a), applicable to situations where the agency record received by the court is incomplete; and subsection (b), applicable where the record received by the court is full and complete. We have explained: A "full and complete record" is defined as "a complete and accurate record of the testimony taken so that the appellant is given a base upon which he may appeal and, also, that the appellate court is given a sufficient record upon which to rule on the questions presented." *City of Philadelphia v. Board of License and Inspection Review*, 590 A.2d 79, 86 (Pa. Cmwlth. 1991) (citation omitted). In the event a full and complete record of the proceedings before the local agency was not made, the court may hear the appeal *de novo*, or may remand the proceedings to the agency for the purpose of

8

making a full and complete record or for further disposition in accordance with the order of the court. *In re Thompson*, 896 A.2d 659, 668 (Pa. Cmwlth. 2006).

Conversely, where a full and complete record is made, a reviewing court shall affirm the adjudication unless it determines that constitutional rights were violated, an error of law was committed, the procedure before the agency was contrary to statute, or the necessary findings of fact were not supported by substantial evidence. 2 Pa. C.S. §754(b); *Public Advocate v. Philadelphia Gas Commission*, 674 A.2d 1056 (Pa. 1996). "If the adjudication is not affirmed, the court may enter any order authorized by 42 Pa. C.S. §706 (relating to disposition of appeals)." 42 Pa. C.S. §754(b). Section 706 provides: "An appellate court may affirm, modify, vacate, set aside or reverse any order brought before it for review, and may remand the matter and direct the entry of such appropriate order, or require such further proceedings to be had as may be just under the circumstances." 42 Pa. C.S. §706.

In determining whether substantial evidence supports an agency's findings, a trial court may look only to the evidence relied upon by the fact finder, in this case the Hearing Officer. *Society Created to Reduce Urban Blight v. Zoning Board of Adjustment, City of Philadelphia*, 804 A.2d 147, 150 (Pa. Cmwlth. 2002) (*SCRUB*). "Nowhere in Section 754 is the reviewing court given general authority to make its own findings of fact and conclusions of law when the local agency has developed a full and complete record but omitted making its findings of fact and conclusions of law." *Id.*

Further, a reviewing court must accept the credibility determinations made by the municipal body which hears the testimony, evaluates the credibility of the witnesses and serves as fact finder. *Thompson*, 896 A.2d at 668. The

reviewing court may not substitute its judgment on the merits for that of the municipal body. *Id.* Assuming the record demonstrates the existence of substantial evidence, the court is bound by the municipal body's findings, which are the result of resolutions of credibility and conflicting testimony. *Id.*

Here, the trial court did not conduct a hearing to take additional evidence. Instead, the trial court, relying upon the full and complete record created by the Hearing Officer, drew its own findings of fact. In so doing, the trial court erred. The trial court's review of the Hearing Officer's decision was limited to determining whether constitutional rights were violated, an error of law was committed, or findings of fact necessary to support the adjudication were not supported by substantial evidence. 2 Pa. C.S. §754(b). Therefore, the issues before us, as they should have been before the trial court, are whether the Hearing Officer committed an error of law in its interpretation of the Plumbing Code or whether findings of fact necessary to support the adjudication are not supported by substantial evidence.

## B. Statutory Construction

The Department contends that the Hearing Officer did not err in denying the variance under the Plumbing Code. The authority to grant variances is discretionary not mandatory pursuant to Section AC-105.1 of the Plumbing Code. Pursuant to the plain language of Sections AC-701.2.2 and AC-701.3 of the Plumbing Code, a single mutual maintenance agreement is required. An agency's interpretation of its own regulation controls unless it is clearly erroneous or inconsistent with the law. Plain meaning should be used in interpreting the terms of the regulation unless they are defined by the regulation or are technical terms. In this case, the Plumbing Code clearly grants the Department discretionary

authority to grant or deny a variance and does not require the Department to provide a justification if the variance is denied.  Furthermore, the common usage of undefined and non-technical terms governing the maintenance agreement requirement was reasonably interpreted by the Department as requiring all property owners connected to a CSL to enter into one agreement that addressed the maintenance and repair of the entire CSL.  The Hearing Officer affirmed these interpretations because they were reasonable and consistent with the language of the regulation.

The rules of statutory construction are applicable to statutes and ordinances alike.  *Thompson*, 896 A.2d at 669.  Section 1921(a) of the Statutory Construction Act of 1972 provides that an ordinance must be construed, if possible, to give effect to all provisions.  1 Pa. C.S. §1921(a); *Thompson*, 896 A.2d at 669.  "Words and phrases shall be construed according to rules of grammar and according to their common and approved usage."  1 Pa. C.S. §1903(a).

Notably, Section 1902 of the Statutory Construction Act provides that "[t]he singular shall include the plural, and the plural, the singular."  1 Pa. C.S. §1902; *see Commonwealth v. Adams*, 524 A.2d 1375, 1378 (Pa. Super. 1987) (per Section 1902, the trial court "was not free to attach such significance to the presence or absence of an 's' at the end of the word 'communication'").  "In the English language plural nouns are often expressed by a word that remains grammatically singular."  *Adams*, 524 A.2d at 1378.  Further, an interpretation of an ordinance which produces an absurd result is contrary to the rules of statutory construction.  *Thompson*, 896 A.2d at 669.

When statutory language is not explicit, courts should give great weight and deference to the interpretation of a statutory or regulatory provision by

11

the administrative or adjudicatory body that is charged with the duty to execute and apply the provision at issue. 1 Pa. C.S. §1921(c)(8). The basis for the judicial deference is the knowledge and expertise that the administrative or adjudicatory body possesses to interpret the ordinance that it is charged with administering. *Thompson*, 896 A.2d at 669. We review the administrative or adjudicatory body's interpretation of the relevant Ordinance provisions for errors of law and abuses of discretion and extend judicial deference where due. *Id.*

Turning to the Ordinance in question, the stated purpose of the Plumbing Code is "to protect the public from the health hazards of inadequate or unsanitary plumbing." Section AC-101.3 of the Plumbing Code. Section AC-105.1 of the Plumbing Code provides, with emphasis added:

> Whenever there are *practical difficulties involved in carrying out the provisions of this code*, the Director and/or his designee shall have the authority to approve modifications on a case by case basis, provided that the Director and/or his designee *shall first find that special circumstances make the strict letter of this code impractical*. Such modifications shall be in conformity with the intent and purpose of this code, *such that they do not negatively impact human or environmental health or fire safety*. The details of an action granting a modification to this code shall be recorded and maintained in the files of the Plumbing Program.

Chapter 2 of the Plumbing Code defines CSL as "[a] private sewer that collects the sewage discharge of more than one building drain/sewer and conveys it to a public sewer." Section AC-701.2.1 of the Plumbing Code directs any dwelling unit to "separately and independently connect[] to a public . . . sewer system . . . if available." A public sewer is deemed "available" if it is located within 250 feet of the property if the public sewer was constructed in or after 1994,

12

or within 150 feet if it was constructed before 1994. Section AC-701.2.2 of the Plumbing Code.

If a connection to a public sewer system is not "immediately available," property owners may seek a variance. *See* Sections AC-701.2.2 and AC-701.3 of the Plumbing Code. Section AC-701.2.2 of the Plumbing Code provides, with emphasis added:

> A variance request *may be granted* by the Director pursuant to Section 105.1, but *shall require*, in addition to any other requirements, *that the present owner records an easement and mutual maintenance agreement in the deed of said property*, and that a copy of the deed is filed with the Administrative Authority.

"*A mutual maintenance agreement shall be recorded in the deeds of all such properties connected to a private sewer . . . system to affix equal responsibility in maintaining the private sewer(s). . . .*" Section AC-701.3 of the Plumbing Code (emphasis added). "A copy of each deed shall be filed with the Administrative Authority." *Id.*

If an existing CSL is discovered, the Department may instruct all the property owners currently served by that lateral to separately and independently connect to the public sewer or, alternatively, seek a variance of the Plumbing Code to remain connected to the CSL and enter into a mutual maintenance agreement that is recorded in their deeds. *See* Section AC-701.3.1 of the Plumbing Code. Specifically, Section AC-701.3.1 of the Plumbing Code provides, with emphasis added:

> When the Administrative Authority identifies the existence of a common sewer lateral (CSL), that is not recorded in the Recorder of Deeds Office of Allegheny County, it may issue orders to all affected property owners to separately connect to an available public

13

sewer, or in the alternative, to record in the Recorder of Deeds Office of Allegheny County, *a document, approved by the Administrative Authority, identifying the existence of the CSL and adequately specifying the maintenance responsibilities for property owners.*

At issue here is whether the Plumbing Code's references to "[a] mutual maintenance agreement" or "a document" mean that these terms must be strictly construed in the singular as opposed to the plural. The Hearing Officer interpreted this language strictly to mean *one* document, opining it "conforms to the letter of the law. . . . There is nothing in the [Department's] Rules and Regulations requiring the [Department] to consider two separate agreements to be read together as one document." Hearing Officer's Decision, at 9. The trial court interpreted the Plumbing Code more liberally to encompass the plural, and, under this interpretation, permitted the Maintenance Agreement and Declaration be read together. Trial Court Opinion, at 3.

Upon review, we find that the Hearing Officer's narrow interpretation of the Plumbing Code to require a singular document is contrary to Section 1902 of the Statutory Construction Act. *See Adams*, 524 A.2d at 1378. We agree with the trial court that the Plumbing Code must be interpreted more liberally to encompass the plural. Under this more liberal interpretation, multiple documents may satisfy the mutual agreement provision.

Notwithstanding, Landowners have not met their burden under the more liberal interpretation. The Maintenance Agreement and Declaration, when read together, do not evidence a mutual assent among "all such properties connected to" the CSL or "affix equal responsibility in maintaining" the CSL as required by Section AC-701.3 of the Plumbing Code. The documents address

14

separate and distinct portions of a CSL (new and existing), but not the entire CSL, and they do not affix equal maintenance responsibilities among the properties.

More particularly, the Maintenance Agreement is a mutual agreement between the property owners of 6414 and 6420 to maintain the existing CSL, which is duly recorded on the deeds of those properties. R.R. at 40a, 151a-57a. The Maintenance Agreement specifies that the cost of any work to correct problems shall be borne equally between 6414 and 6420. R.R. at 40a, 152a. The agreement contains no provision about adding another property to the line, and makes no reference to 6410. R.R. at 75a; *see* R.R. at 151a-53a.

Conversely, the Declaration represents an agreement between 6410 and 6414 and assigns full maintenance responsibility for the new CSL extension, which connects 6410 to the existing CSL, to owners of 6410, but it assigns no maintenance responsibility for the existing CSL. R.R. at 49a, 161a-163a. The Declaration is duly recorded on the deed of 6410. R.R. at 161a.

Landowners make a compelling argument that every inch of CSL extending from 6410 Adelphia Street to the public sewer line is accounted for in some way by the Maintenance Agreement and the Declaration, which are duly recorded with Allegheny County. The documents, when read together, do "specify[] the maintenance responsibilities for property owners" for the new and existing CSL. Section AC-701.3.1 of the Plumbing Code.

However, what is missing is a *mutual* agreement recorded in the deeds of "all such properties connected to" the CSL because there is no agreement between the owners of 6420 and 6410. Neither the Maintenance Agreement nor the Declaration include all parties to be served by the CSL, and neither agreement addresses the maintenance of the entire CSL. If the variance were granted, 6410

15

would receive the full benefit and use of the existing CSL, but would share none of the attendant burdens of maintaining, repairing or replacing the existing CSL. The duly-recorded documents, when read together, do not show that Neighbors have consented to allow 6410 to use the existing CSL.[4] As Mr. Grese testified, if a property is not in violation of the Plumbing Code, the Department cannot force that property to do something regarding their *private* property. R.R. at 103a. Absent evidence of a mutual maintenance agreement among all property owners served by the CSL, we are constrained to conclude that Landowners have not satisfied the criteria for a variance under the Plumbing Code. Although the Hearing Officer

---

[4] The Hearing Officer found that the Neighbors specifically did not agree to permit 6410 to connect to the CSL based on his knowledge of what transpired at a conference among Landowners, Neighbors, Department personnel, respective counsel and the Hearing Officer himself. However, Landowners challenge this finding as unsupported by the record. Indeed, the record is devoid of evidence to support what transpired at this conference. Nevertheless, Mr. Caputo himself testified that he tried to obtain a common agreement, and even offered to pay 100% of the maintenance for the entire CSL, but Neighbors refused. R.R. at 74a. Notwithstanding, the documents themselves do not evidence a mutual maintenance agreement among all properties serviced by the CSL.

Landowners also take issue with the Hearing Officer's finding regarding the Neighbors' stance on the basis that an administrative tribunal is not a proper forum for addressing private property rights. As the Hearing Officer correctly held, the Department "is not defining the rights of private parties, but rather enforcing its own regulation." As the Department explained in its reply brief:

> [T]he Department is ***not*** forcing [Landowners] to connect to a private sewer line or to any specific private sewer. The Department merely asserts that ***if*** [Landowners] connect to a private sewer such that a [CSL] is created or extended, then they must provide proof . . . that the maintenance of that entire sewer line will be managed by ***all*** property owners served by that sewer.

Appellant's Reply Brief at 5 (emphasis in original).

16

erred in its strict interpretation of the Plumbing Code, we nevertheless conclude that the Hearing Officer did not err or abuse its discretion by denying the variance.

## IV. Conclusion

Upon review, we conclude that the trial court erred when it substituted its judgment for that of the Hearing Officer and further erred when it reversed the Hearing Officer's denial of the variance. Accordingly, we reverse the trial court's determination.[5]

_____
MICHAEL H. WOJCIK, Judge

_____

[5] In light of this determination, it is not necessary to address the Department's substantial evidence argument.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Michael A. Caputo and : 
Janice M. Caputo : 
: 
v. : No. 207 C.D. 2019
: 
Allegheny County Health : 
Department, : 
: 
Appellant : 

# **O R D E R**

AND NOW, this 25th day of October, 2019, the order of the Court of Common Pleas of Allegheny County, dated January 29, 2019, is REVERSED.

_____
MICHAEL H. WOJCIK, Judge