J-A29004-23

2024 PA Super 41

COMMONWEALTH OF PENNSYLVANIA  :   IN THE SUPERIOR COURT OF
                        :         PENNSYLVANIA
            Appellant   :
                        :
                        :
           v.          :
                        :
                        :
MICHAEL C. LISSMORE        :   No. 485 WDA 2023

Appeal from the Suppression Order Entered March 22, 2023
In the Court of Common Pleas of McKean County Criminal Division at
No(s):  CP-42-CR-0000530-2022

BEFORE:  BOWES, J., KUNSELMAN, J., and MURRAY, J.

OPINION BY BOWES, J.:              **FILED:  March 7, 2024**

The Commonwealth appeals from the order granting the motion to suppress filed by Appellee Michael C. Lissmore.  We reverse and remand for further proceedings.

The trial court offered the following summary of the underlying offense:

> On October 3, 2021, members of the McKean County Drug Task Force and confidential informant "CI-020-21" (hereafter "CI") met to conduct a controlled buy of illegal narcotics.  A purchase, which the Commonwealth asserts was with [Appellee], occurred either later that day or on October 4, 2021.  To facilitate the purchase, the CI, in the presence of taskforce officers, made a telephone call to "Freckles," who is purportedly [Appellee].  The CI placed her phone on speakerphone so that the officers could hear it and it was recorded by use of a video recording device. The Commonwealth asserts that, in exchange for $260, the CI obtained 5.37 grams of cocaine from [Appellee].  The transfer occurred on Bushnell Street [in] Bradford, Pennsylvania.  In the recorded call, the CI and a male identified as Freckles discuss the purchase of cocaine.  There is a later recording, obtained by the use of a video and audio recording device that was with the CI, that captures the CI traveling to and meeting with Freckles on

> Bushnell Street. The recording captures audio and video recordings of the meeting. Freckles['s] voice can be heard.

Trial Court Opinion, 3/22/23, at 1 (some punctuation modified).

Appellee, alleged to be Freckles, was charged with various offenses in connection with the sale of cocaine to the CI. He filed an omnibus pretrial motion seeking, *inter alia*, to suppress the recordings obtained by the CI.[1] Specifically, Appellee contended that "the use of a 'wire' to audio/video record an individual within a vehicle requires a demonstration that the District Attorney's Office . . . reviewed and determined voluntariness of the consent required to circumvent the Wiretap Act." Omnibus Pretrial Motion, 2/13/23, at 4.

The trial court held a hearing on the motion at which District Attorney ("DA") Stephanie Vettenburg-Shaffer and Chief Michael Ward of the Bradford City Police Department and the McKean County Drug Task Force testified. The court summarized that testimony as follows:

> [DA] Vettenburg-Shaffer testified that she has an established policy for approving confidential informants for narcotic purchases. She meets and/or speaks with them routinely, often on several occasions while they are working with the McKean County Taskforce. There is a form that she utilizes when speaking with them. She utilizes the form to assure that she fully explains to every confidential informant their responsibilities and the terms of their agreement with the Taskforce. She indicated that she met with the CI in this case on

---

[1] Appellee also raised an issue concerning the use of a body-worn camera, but acknowledged at the close of the subsequent suppression hearing that no body camera was utilized as he had alleged. *See* N.T. Suppression Hearing, 3/7/23, at 29.

- 2 -

July 21, 2021, which was prior to October 3rd and 4th, 2021.[1] She read the sections of her standard form to the CI. The form includes provisions that advise a confidential informant that their participation as a confidential informant is voluntary, and a provision that advises the informant that they are consenting to the recording of their interactions with any potential suspect.

_____

[1] The [DA] also testified that she met with the CI again in November of 2021. However, since this meeting was after the recordings in October, it would be irrelevant to the approval of the District Attorney and the consent of the CI on October 3rd and 4th, 2021.

Chief [Ward] testified . . . that a police body camera was not utilized to capture the phone call between the CI and Freckles on October 3, 2021. He explained that he used a separate recording device that the taskforce has to capture and record that call. An "Axon" video recording device, that was with the CI, was then used to capture audio and video images of the CI's travel to and meeting with Freckles. There was no testimony presented that Chief Ward, or any other McKean County Taskforce member, specifically advised the [DA] that [they] were going to record the cellphone conversation between the CI and [Appellee], or the oral conversation between [Appellee] and the CI in the vehicle during the asserted exchange of cash for narcotics. [DA] Vettenburg-Shaffer and the CI did not discuss the potential purchases from Freckles.

Chief Ward explained that the device utilized to capture the phone call is turned on by the operator when they want to start recording and then turned off when the user wants to end the recording. He agreed that Freckles would not have known that his voice and image was being captured anytime during the recordings.

The testimony provided at the hearing was vague regarding the information provided to [DA] Vettenburg-Shaffer and her approval of the recordings. . . . Chief Ward [indicated] that the [DA] had approved the intercept, but there was no explanation of what Chief Ward had told the [DA]. The [DA] later, again during her questioning, indicated: "this occurred after the informant gave consent and I approved," when discussing the plan leading up to the controlled purchase.[2] There was no specific testimony about the details of the information, or lack thereof, that Chief

- 3 -

Ward had provided before the recordings were made and that the [DA] specifically told him that he had her approval to record the call and the meeting between the CI and Freckles. The [DA] did not indicate, except again the general reference in her questioning, that she was specifically advised of the potential purchase from Freckles, or that she had specifically advised Chief Ward that the recordings on October 3rd or 4th were specifically approved.

_____

[2] The quotations herein are from the court's notes at the time of the hearing.

Other than Chief Ward testifying that the CI "was consentualized," there were few specifics presented regarding the discussion between the CI and Chief Ward or any member of the taskforce regarding her consent to record the telephone call and her subsequent meeting with Freckles.

Trial Court Opinion, 3/22/23, at 2-4 (some punctuation modified).

Ultimately, the trial court granted Appellee's suppression motion upon finding that the DA's "blanket approval for any future calls with any future suspects, given months in advance, d[id] not fulfill the stringent requirements of the Wiretap Act." *Id*. at 8. Specifically, the court noted the dearth of evidence "that she was provided 'the facts' surrounding the potential call and anticipated later purchase" such that they properly informed the DA's approval of the intercept in question. *Id*.

The Commonwealth filed a timely notice of appeal and certified therein that the trial court's ruling substantially handicapped the prosecution. *See* Pa.R.A.P. 311 (d) ("[T]he Commonwealth may take an appeal as of right from an order that does not end the entire case where the Commonwealth certifies in the notice of appeal that the order will terminate or substantially handicap

- 4 -

the prosecution."). The trial court directed the Commonwealth to comply with Pa.R.A.P. 1925(b), and it timely filed a statement of errors complained of on appeal alleging nine claims.[2]

The Commonwealth restates those nine issues in its brief in its statement of questions presented:

>    (1)    The trial court erred and/or misapplied the law when it granted the suppression motion, including the relevant statute.
>
>    (2)    The trial court misapplied the law when it found that there were additional necessary steps that were not taken prior to the

_____

[2] In its Pa.R.A.P. 1925(a) opinion, the trial court complained that many of the Commonwealth's claims "are vague and difficult to analyze." **See** Trial Court Opinion, 5/30/23, at 1. While we agree that the Commonwealth's statement is not a model for best appellate practices, it served the purpose of assisting the trial court in preparing its opinion for this Court. Even if the statement were grossly defective, the waiver provisions of Rule 1925 would not apply here. First, the order was never properly entered, as the docket does not reflect that it was served upon the Commonwealth. **See**, **e.g.**, **Commonwealth v. Davis**, 867 A.2d 585, 588 (Pa.Super. 2005) (**en banc**) (holding Rule 1925 waiver did not apply where it was "clear the clerk did not comply with the mandatory requirements of Pa.R.Crim.P. 114"). Second, the trial court's order was itself noncompliant with Rule 1925 in that it did not specify "both the place the appellant can serve the Statement in person and the address to which the appellant can mail the Statement." Pa.R.A.P. 1925(b)(3)(iii). The order also referenced Pa.R.A.P. 2116(a), which, as noted *infra*, governs the statement of questions in an appellate brief. Rule 2116 has no bearing on compliance with a Rule 1925(b) order. In such circumstances, we have declined to sanction the appellant. **See**, **e.g.**, **Commonwealth v. Jones**, 193 A.3d 957, 962–63 (Pa.Super. 2018) (declining to find waiver where the order did not strictly comply with Rule 1925(b)(3) and improperly directed compliance with Rule 2116). As this Court has opined, "[i]t would be fundamentally unfair to require appellants to strictly comply with the requirements of Rule 1925, but not require the same diligence from the trial court requesting a Rule 1925(b) statement." **Boyle v. Main Line Health, Inc.**, 272 A.3d 466, 2022 WL 96613 at *5 n.8 (Pa.Super. 2022) (non-precedential decision).

evidence being obtained (and requiring steps that are not required by the relevant statute).

(3)   The trial court erred when it allowed testimony and argument and based its opinion on (including citing to caselaw) matters not raised with specificity in the motion and erred when it made various findings that there was not sufficient information provided during the hearing when the matter about which it makes such assertions were not raised—including no allegation raised that the informant did not properly consent and resulting in lack of notice—and proper opportunity to respond—to the Commonwealth.

(4)   The trial court erred in finding that the [CI] had not consented or that the proper person did not insure voluntary consent (including that consent is required to be obtained either prior to each interception or closer in time to the interception and/or the [DA] did not consentualize the [CI] to intercept regarding the suspected criminal activity (particularly when not before the court)) and, in effect, disproving of the approval the [DA] gave for the interceptions of the drug investigation.

(5)   The trial court erred in finding that the subsequent meeting(s) with the CI and DA is irrelevant.

(6)   The trial court erred in making findings on matters not raised, rather than addressing the matters that were raised: finding that discovery had been provided (or ordering that it be provided) and finding that no court order was required prior to any intercept.

(7)   The trial court erred in suppressing interceptions when made pursuant to an exception under [18 Pa.C.S. §] 5704.

(8)   The trial court erred when, after it found on the record that the proper steps had been taken and the [CI] had consented, it, nonetheless, granted suppression.

(9)   The trial court erred when it permitted the defense to argue defects in the process at the time of the hearing/closing argument rather than directing discovery to be provided (if it found it had not been) and then direct the defense to properly raise any alleged errors in a proper motion with proper notice when the issues raised involved an inaccurate assertion that (1) a body-worn

- 6 -

camera was used and a court order was required and (2) that information had not been provided—which were quickly resolved in the hearing schedule on a motion only raising one overbroad request for relief—"to preclude the use of the evidence surrounding the phone call . . ." and not raising a lack of consent.

Commonwealth's brief at 4-5 (unnecessary capitalization and punctuation omitted).

We begin with a review of the applicable law:

> Our standard of review of a Commonwealth's appeal from a grant of a suppression order is well-settled[.]  We consider only the evidence from the defendant's witnesses together with the evidence of the prosecution that, when read in the context of the entire record, remains uncontradicted.  The suppression court's findings of fact bind an appellate court if the record supports those findings.  The suppression court's conclusions of law, however, are not binding on an appellate court, whose duty is to determine if the suppression court properly applied the law to the facts.  Additionally, the appellate scope of review is limited to only evidence presented at the suppression hearing.

***Commonwealth v. Singletary***, 267 A.3d 1267, 1273 (Pa.Super. 2021) (cleaned up).

Although the Commonwealth stated nine separate questions concerning the trial court's suppression ruling, its brief contains only one sprawling argument section.[3]  Relevant to our disposition herein, the Commonwealth

---

[3] We remind the Commonwealth that our rules provide as follows:

> The argument shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part-- in distinctive type or in type distinctively displayed--the particular point treated therein, followed by such discussion and citation of authorities as are deemed pertinent.

*(Footnote Continued Next Page)*

essentially argues that the trial court imposed requirements beyond those found in the Wiretap Act ("the Act"), and thereby erred in holding that the Commonwealth failed to establish that it obtained the CI's consent in conformity with the Act. *See* Commonwealth's brief at 22-28. Accordingly, we next examine the applicable portions of the Act, codified at 18 Pa.C.S. §§ 5701-5782.

As a general rule, it is a felony to intentionally intercept wire, electronic, or oral communications or to disclose or use such interceptions. *See* 18 Pa.C.S. § 5703. However, our legislature has enumerated a host of exceptions to that general rule within § 5704 of the Act. Of relevance to the instant appeal, that provision indicates that it is not unlawful for:

> Any investigative or law enforcement officer or any person acting at the direction or request of an investigative or law enforcement officer to intercept a wire, electronic or oral communication involving suspected criminal activities . . . where:
>
> . . . .
>
> (ii) one of the parties to the communication has given prior consent to such interception. However, no interception under this paragraph shall be made unless . . . the district attorney, or an assistant district attorney designated in writing by the district attorney, of the county wherein the interception is to be

_____

Pa.R.A.P. 2119(a). If there is only one argument to be made, a single, comprehensive question is sufficient. *See* Pa.R.A.P. 2116(a) ("The statement of the questions involved must state **concisely** the issues to be resolved, expressed in the terms and circumstances of the case but **without unnecessary detail**. The statement will be **deemed to include every subsidiary question fairly comprised therein**." (emphases added)).

- 8 -

initiated, has reviewed the facts and is satisfied that the consent is voluntary and has given prior approval for the interception[.]

18 Pa.C.S. § 5704(2). This Court has observed that "[t]emporal restrictions, such as 'ongoing,' 'current,' and 'contemporaneous,' are not suggested in the language of § 5704(2)(ii)." *Commonwealth v. Taylor*, 622 A.2d 329, 333 (Pa.Super. 1993). "Instead, we require that the Commonwealth must have 'reasonable grounds' for the monitoring." *Id*.

Concerning the consent aspect of this provision, our Supreme Court "has emphatically stated that for the purposes of . . . § 5704(2)(ii), one's consent must be given voluntarily in order for the governmental actions to be lawful." *Commonwealth v. Rodriguez*, 548 A.2d 1211, 1213 (Pa. 1988). Such consent "must be the product of an essentially free and unconstrained choice by its maker. His will must not have been overborne and his capacity for self-determination critically impaired." *Id*. (cleaned up). "Each case must be determined from the totality of the circumstances." *Id*. (cleaned up). Our High Court explained that "consent is not voluntary where it is the product of coercion or duress either express or implied. However, a decision to consent is not rendered involuntary merely because it is induced by a desire to avoid the possibility of a well[-] founded prosecution." *Id*. (cleaned up).

Critically, "[t]here is no statutory requirement that consent be authorized prior to every conversation[.]" *Commonwealth v. Adams*, 524 A.2d 1375, 1378 (Pa.Super. 1987). Nor does the target of a consensual

interception need to be identified. **Commonwealth v. Barone**, 556 A.2d 908, 911 (Pa.Super. 1989). Furthermore, unlike the statute governing court orders for non-consensual interceptions, § 5704(2)(ii) does not "set forth a specific length of time during which a consent remains viable."[4] **Adams**, 524 A.2d at 1378. Instead, "[a]ll that is required is that the informant acts consensually, that his consent is voluntary, and that the informant acts under the direction of an investigative or law enforcement officer to intercept oral communications involving suspected criminal activities." **Id**.

Here, the trial court acknowledged that the § 5704(2)(ii) did not require the DA to review and approve each specific interception. **See** Trial Court Opinion, 3/22/23, at 8. Yet, it granted Appellee's suppression motion on the bases that (1) "there was no specific testimony about what the [DA] was told, that she was provided 'the facts' surrounding the potential call and anticipated later purchase, and that she considered them and then granted approval;" and (2) "there [was] insufficient evidence in the record to support . . . that the CI voluntarily consented to the recording of this specific call and her later conversation with [Appellee]/Freckles." **Id**. at 8-9 (unnecessary punctuation omitted). In its Rule 1925(a) opinion, the trial court confirmed that its grant of suppression was premised upon its finding that "consent, based upon a

---

[4] **Cf**. 18 Pa.C.S. § 5712(b) (providing that no court order for a non-consensual wiretap "shall authorize the interception of wire, electronic or oral communications for any period exceeding [thirty] days").

- 10 -

conversation weeks before the recordings and which did not focus on these specific recordings, was invalid." Trial Court Opinion, 5/30/23, at 2.

The Commonwealth argues that the trial court erred in ruling that it was required to produce evidence that the DA evaluated the CI's consent for the specific call at issue with Appellee in order to establish its compliance with the mandates of § 5704(2)(ii). **See** Commonwealth's brief at 22-27. We agree.

Here, Appellee's suppression motion recited the Act's allowance of recordings "so long as one party consents to the recording" and that consent is "reviewed by a designated attorney." Omnibus Pretrial Motion, 2/13/23, at 6. Appellee then moved to suppress, asserting that "there is no information or evidence surrounding the inquiry into the consent tendered by the [CI]." In particular, "[t]here is no indication that a conversation occurred between the [DA] or authorized attorney, and the [CI]. There is nothing to demonstrate that there is not any coercion or undue pressure to force the [CI] to engage in the recording." **Id**. Appellee homed in on the evidence sought from the Commonwealth as follows: "To be clear, there is not testimony required from the [DA] or an attorney from the [DA's] office, but some form of testimony or evidence tendered that the requisite analysis has been performed in this case." **Id**. at 7 (unnecessary capitalization omitted).

At the suppression hearing, DA Vettenburg-Shaffer testified as a witness as well as serving as attorney for the Commonwealth. To address Appellee's

issue concerning obtaining consent from the CI, DA Vettenburg-Shaffer

provided the following information to the court:[5]

> [DA] VETTENBURG-SHAFFER: . . . In this case I was satisfied that the consent was voluntary. The [CI] came into our office voluntarily on her own requesting to be a confidential informant. Met with several officers to agree to be an informant. Information was conveyed to me by law enforcement and Detective Terry Fuqua regarding a larger drug investigation. Officer Fuqua is a certified wiretap officer and he requested that I approved the [CI]. I did a FaceTime meeting with the [CI]. In fact, I did it on three different occasions, but the relevant time period I did a 15-minute video conference with the informant. The [CI] had been an informant previously so I was very comfortable and had a lot of experience with that [CI]. I reviewed a questionnaire that I do informally with all informants that I use as a gain to determine if -- to make sure that they're voluntary. They have to provide their name and their age, what promises or understandings were made to you if any. None were. Are you presently under the influence of alcohol or any drugs? No. Are you freely and voluntarily consenting to the interception recording by the Drug Task Force? Yes. Are you freely --
>
> THE COURT: Hold on. Is this something you said to her or is that something she signed?
>
> [DA] VETTENBURG-SHAFFER: Yeah, so what I do is when I meet with the informants I read the questions with them and then I -- basically, I'm taking my own notes. This is an internal document that I use. No form is required under the law. It's just something that I've grown accustomed to using to gauge -- just to make sure that I am comfortable that they're consenting, they're intelligent. It's almost like a colloquy that the court does when you take a plea. It's similar to what I'm doing. So, it's just what I use to gauge somebody's consent.
>
> THE COURT: And that's what you did in this case?

---

[5] DA Vettenburg-Shaffer was not sworn as a witness until immediately prior to Appellee's cross-examination. However, at that time she confirmed under oath the accuracy of her prior representations. *See* N.T. Suppression Hearing, 3/7/23, at 12.

[DA] VETTENBURG-SHAFFER: Correct.

THE COURT: You went through those questions?

[DA] VETTENBURG-SHAFFER: Yes.

THE COURT: You made notes?

[DA] VETTENBURG-SHAFFER: Correct.

THE COURT: Go ahead.

[DA] VETTENBURG-SHAFFER: Do you realize that you'll have to testify in court? They did. Any criminal charges pending against them? There were. Are you presently represented by legal counsel? Yes. In fact, this informant had two cases that were pending during that relevant time period with three different attorneys in those cases.

Do you desire legal counsel to be present during our discussions? No. Does the attorney know and agree with your cooperation? The answer was yes. And I had personal knowledge of that because I had been in contact with the attorney throughout the time period.

Have you been promised that things will quote "go easy on you if you cooperated?" Have any threats been made to you by law enforcement or anybody to get you to agree to this? Of course, the answer was no.

It's also noteworthy that my practice and I specifically recall doing it in this case. I always have the officer step out so when I'm meeting with the informant it's only me and the informant. Because I feel that if the officer was pressuring them, in their head they felt pressured by the officer, they would be less inclined to say that to me if the officer was present. So, this is a private conversation that I have with the informant.

Did law enforcement indicate that you'd be treated more harshly if you refused to cooperate and give your consent? No. Did officers tell you that your cooperation would be brought to the attention of the court? Have any other promises, threats or representations been made to you by anybody? No. Have you previously agreed to cooperate with law enforcement officials?

- 13 -

Yes. Did that agreement include electronic surveillance? Yes. Do you realize that if you do not specifically agree to cooperate by assisting in electronic surveillance that your refusal will not affect any previous agreement that you had with [the] Commonwealth and will not be held against you in any manner whatsoever? The [CI] indicated yes.

Lastly, I talk about if any of the -- don't talk about any criminal charges that you may have or anybody may have on the video because we will hear that and indicating to them that they can stop their cooperation at any time. The [CI] understood, answered the questions, had no problems and signed and agreed.

So, after I had received all of the information from the officers and met with the [CI] I did approve the [CI] and I felt that she or he was voluntarily consenting to do this.

Again, during this time period, the [CI] had two cases going and on one case the [CI] was represented by one attorney and at the other case the [CI] had – I would say one attorney, but the one attorney became unavailable for one portion of the proceeding, so another attorney I think stepped in voluntarily. But the attorneys were emailing me is this person still working? What do you want us to do with the underlying cases? I'm confirming with them that they signed various requests to continue the underlying cases. I think the cases were continued each ten times because the attorneys also were satisfied that the [CI] was cooperating and the [CI] signed a waiver of speedy trial rights with the assistance of the attorneys and those were filed in both of those cases.

So again, due to my prior knowledge of the [CI], my questions that really were just my internal guide to make sure that somebody is consenting voluntarily, the fact that the [CI] was represented by counsel, counsel knew what was happening and that the [CI] was cooperating. I was more than satisfied that the consent was voluntary.

N.T. Suppression Hearing, 3/7/23, at 7-11 (unnecessary capitalization omitted).

Appellee expressly declined to dispute any of the above facts. *Id*. at 11. Instead, he questioned DA Vettenburg-Shaffer as to the date of her review of the voluntariness of the CI's consent. DA Vettenburg-Shaffer responded: "I did it numerous times with this [CI] during this rela -- relative time period. I did it on July 12th of 2021, November something of 2021 and March of 2022. I don't remember the exact dates in November or March but I know it was those months." *Id*.

Upon this evidence, the trial court made the factual finding that the Commonwealth correctly followed procedure, and it "did everything, [it] got consent and there's nothing in this record that shows that the [CI] didn't consent. Everything shows that the [CI] was fully advised, knew it would be reported, consented to that." *Id*. at 31-32. Nonetheless, the court granted Appellee's motion, not because the DA failed to confirm the CI's voluntary consent, but because the consent occurred weeks prior to the interception of the CI's call to Appellee and did not focus upon that particular recording. **See** Trial Court Opinion, 5/30/23, at 2.

This Court long ago held that "a person who has not been the subject of any threats or coercion is permitted to consent in advance to the recording of more than one conversation." **Adams**, 524 A.2d at 1378. We explained that, "where the informant is cognizant of his right to withdraw his consent, yet he chooses to go ahead with a conversation fully aware that law enforcement officials are listening, we perceive no danger to the legislature's concern that

consent to electronic surveillance be voluntary." *Id*. The Wiretap Act contains no mandate that the target of the interception be identified, that each conversation be specifically authorized, or that consent extends only for a limited period of time. *See Barone*, 556 A.2d at 911; *Adams*, 524 A.2d at 1378. Rather, all that the Act dictates "is that the informant acts consensually, that his consent is voluntary, and that the informant acts under the direction of an investigative or law enforcement officer to intercept oral communications involving suspected criminal activities." *Adams*, 524 A.2d at 1378. The evidence here satisfied these basic requirements.

In particular, DA Vettenburg-Shaffer's recitation, accepted by the trial court, thoroughly detailed the indicia of the CI's voluntary consent and the CI's understanding that the cooperation could cease at any time without adverse consequences to the CI. *See* N.T. Suppression Hearing, 3/7/23, at 7-11. The DA had previously utilized this CI as part of an ongoing investigation back in 2016 as well as the investigation in 2021 and 2022 that resulted in the charges against Appellee. *Id*. at 14. The DA approved the CI's participation in intercepting communications with targets of the 2021-22 investigation for specific, pre-determined time periods of approximately three months each, after which she would conduct a new evaluation with the CI to ensure continued consent. *Id*. at 11. The interception of the CI's conversation with Appellee on October 3, 2021, was within the initial term of the DA's approval upon evaluating the CI's consent on July 12, 2021.

As such, the procedure utilized by the DA here satisfied § 5704(2)(ii). *Compare Barone*, 556 A.2d at 910 (affirming denial of suppression, although the interception authorization was not specific to the appellant, where the Commonwealth established that consent was validly obtained from an informant who was represented by counsel and freely agreed to help the prosecution before he "began a pattern of cooperation with [an] ongoing drug investigation"), *and Adams*, 524 A.2d at 1378 (approving procedure whereby the attorney general interviewed the informant to ensure continued voluntary consent for each authorized period of interceptions); *with Commonwealth v. Spence*, 631 A.2d 666, 669 (Pa.Super. 1993) (holding that the Wiretap Act was violated where the informant's consent was not reassessed after the initial period of consent), *and Commonwealth v. Clark*, 542 A.2d 1036, 1039 (Pa.Super. 1988) (affirming suppression where the DA's designee "did not meet with or speak to [the informant prior to obtaining his consent for each new period of surveillance").

Consequently, the trial court erred in ruling otherwise. Therefore, we reverse the order that granted the suppression motion and remand for further proceedings.

Order reversed. Case remanded for further proceedings. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


DATE:  3/7/2024